# Wytheville

CHARLES ROPER LEATH, EXECUTOR OF BRUCE TEMPLE LEATH, DECEASED V. RICHMOND, FREDERICKSBURG AND POTOMAC RAILROAD COMPANY.

June 14, 1934.

Present, Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Smith & Gordon,* for the plaintiff in error.

*E. Randolph Williams, Virgil P. Randolph, Jr.,* and *Edmund M. Preston,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Bruce Temple Leath was struck and killed at a grade crossing by a passenger train of defendant company. His executor instituted this action for wrongful death. At the conclusion of the introduction of evidence for plaintiff the trial court sustained a motion to strike, and so instructed the jury, who thereupon returned a verdict for defendant. The correctness of this ruling is the only question involved in the case.

The accident ocurred about noon on September 12, 1931, at a grade crossing known as Hunton, where the Mill road crosses the double track of defendant company. At this point the Mill road runs approximately northeast and southwest and the railroad track approximately north and south. Just east of the crossing the highway turns somewhat to the west and crosses the right-of-way at less than a right angle.

Leath, driving his automobile at a moderate rate of speed, approached the crossing from the east, and just before reaching it reduced his speed to five or ten miles an hour. The train was on the south-bound track, running sixty miles an hour. About 1325 feet north of the crossing there is a deep cut on the right-of-way, over which is a wooden bridge. Beyond this bridge the train could not be seen by a traveler approaching from the east. There are two buildings on the right-of-way, *i. e.,* a waiting room, about sixteen feet wide, situated some ten feet north of the highway, and about eighty-five feet beyond a freight depot, which, including its platform, is approximately twenty-five feet wide. These buildings obstruct the traveler's view when within sixty-two feet of

the south-bound track. Within thirty-four feet of the south-bound track plaintiff's decedent had an unobstructed view of the approaching train. The testimony of plaintiff's witnesses that the statutory signals were not given was not contradicted.

This evidence establishes (1) that the company was guilty of negligence, and (2) that plaintiff's decedent was guilty of contributory negligence in his failure to see the train and stop his car before reaching the south-bound track. The real question involved is whether the failure to give the signals was a contributing cause of the collision.

Strange as it may seem, both parties rely upon the testimony of the same witness, C. C. Wyatt, to support their respective contentions. It appears from a reading of his testimony that Wyatt became somewhat confused while on the stand and his answers to the questions were not always clear, full or responsive. In considering his evidence on the motion, it must be remembered that every fair inference from it must be resolved against the defendant company and in favor of plaintiff.

Wyatt testified that he was standing on the east side of the waiting room and two boys were playing near him. When he saw the train approaching he called the boys' attention to this fact, and as he did so he noticed the automobile driven by Leath coming down the highway. When it reached the road which turns to the left in front of Jones' store, which is approximately 180 feet from the track, its speed was reduced, and as it reached the crossing it was traveling from five to ten miles an hour. When Leath was some twenty or twenty-five yards from the track he looked north in the direction of the approaching train, and as he passed the point where the witness was standing he again appeared to be looking north. When the automobile reached the north-bound track Wyatt saw the driver shift to second gear and the speed of the car was noticeably increased. Just before the rear end of the automobile cleared the south-bound track its rear bumper was struck by the engine.

According to the map the space between the north and south-bound tracks is about eight feet and the space between the rails is about four and one-half feet. The overhang of the engine is from eighteen inches to two feet, and the front of the automobile is some five feet from the driver. From which it appears that when the driver of the automobile reached the north-bound track the front of his car was within a few feet of the overhang, or extension, of the train on the south-bound track.

Of course the witness could not tell just when or at what particular point the driver of the car saw the train which was approaching somewhat from behind, but from his testimony it is fair to infer that, in his opinion, the driver of the car did not see the train in time to avoid the collision by stopping his automobile; that the driver realized this and attempted to avoid the danger by increasing the speed of his car and clearing the crossing before the train reached it. This witness, when pressed on cross-examination, stated:

"Q. Didn't you testify at the coroner's inquest that he looked and saw the train?

"A. Well, I really believe—I know he saw the train just as he was on the track, because he put his car in second gear and stepped on the gas to try to get off. You could see he saw it by throwing his car in second gear * * *

" * * * He saw the train, but just as he hit the track.

"Q. As a matter of fact, he passed you looking around to his right, saw the train and shot the car in second gear and tried to beat the train across?

"A. Well, he had to do that."

These facts clearly distinguish this case from *C. & O. Ry. Co.* v. *Barlow,* 155 Va. 863, 156 S. E. 397. There the driver of the car testified that he "looked, looked good" * * * "and continued to look" for a train approaching at night with its powerful headlight burning. We held that under such circumstances he was bound to have seen the train.

The facts in the case at bar are very similar to those

in *Virginian Railway Co.* v. *Bacon,* 156 Va. 337, 157 S. E. 789, 791, where Judge Holt, delivering the opinion of the court, said:

"The train which occasioned the damage came measurably from behind. He should have seen it, and his failure to do so was negligence, but we cannot, as a matter of law, go beyond this. The mere fact that he was careless in looking does not preclude a recovery, but must be weighed in mitigation of damages. It is possible that he might have heard the whistle, if sounded, and in that way have saved himself."

The tendency seems to be growing to so extend the use of the motion to strike plaintiff's evidence as to deprive litigants of the benefits contemplated by the Code revisors in section 6251. We, therefore, repeat what we have heretofore said, that trial courts in considering motions to strike plaintiff's evidence should in every case where there is any doubt on the question overrule the motion. The use of this motion as a means to defeat plaintiff's action should be confined and applied only to those cases in which it is conclusively apparent that plaintiff has proven no cause of action against defendant. Too often in tort actions plaintiffs are put to the delay and expense of obtaining in this court a reversal on this ground, which of necessity requires a new trial. If the trial court overrules the motion to strike, submits the case to the jury, and a verdict is returned, he then may set aside the verdict on the ground that it is contrary to the evidence, or without evidence to support it. If upon review this court reaches a different conclusion, the record includes the verdict and final judgment may be here entered. This was the purpose of the Code revisors in drafting section 6251. (See revisors' notes.)

For the reasons stated, the judgment is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*

EPES, J., dissenting.