## 𝕾taunton

EDWARD PARKER MCGEHEE V. DOROTHY MARIE PERKINS
AND AKERS MOTOR LINES, INCORPORATED.

September 8, 1948.

Record No. 3374.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples
and Miller, JJ.

*Robert Lewis Young* and *John B. Browder*, for the plaintiff in error.

*Louis S. Herrink, C. O'Conor Goolrick, James Ashby, Jr.*, and *Leith S. Bremner*, for the defendants in error.

Eggleston, J., delivered the opinion of the court.

Dorothy Marie Perkins was severely injured when the automobile in which she was riding as a guest passenger and driven by Edward Parker McGehee ran into the rear of a tractor trailer truck owned and operated by Akers Motor Lines, Incorporated, which had come to a stop on the pavement. To recover damages for her injuries Miss Perkins filed an action at law against both Akers Motor Lines, Incorporated, and McGehee. The trial resulted in a verdict in her favor against both defendants. Motions for a new

trial, filed by the two defendants, were overruled and final judgment was entered on the verdict. The matter is before us on a writ of error granted McGehee. The Akers Motor Lines, Incorporated, is not here contesting its liability, but is insisting that the judgment against McGehee be sustained.

The main contention of McGehee is that the evidence adduced before the trial court is insufficient to sustain a finding that he was guilty of gross negligence which proximately caused the collision and the injuries to his guest, Miss Perkins. Proof of gross negligence is necessary under the statute in order to sustain a judgment in favor of a guest against a host. Michie's Code of 1942, section 2154(232); Acts 1938, ch. 285, p. 417.

The collision occurred at about 10:30 p. m. on May 26, 1945, while the McGehee car was proceeding southwardly along U. S. Highway No. 1, and when it had reached a point about four miles north of Stafford Court House. It was a dark night, a misty rain was falling, the visibility was poor, and the pavement was wet. At the point where the collision occurred the paved portion of the highway is forty feet wide and is divided into four ten-foot traffic lanes, indicated by lines painted on the pavement, the center of the road being shown by a double line and the lateral lanes by single lines. Beginning about 500 feet north of and leading up to the point of the collision the road is straight and slightly upgrade.

The Akers truck had likewise been proceeding southwardly along the same highway. Shortly before the collision, because of a weak battery, the engine had failed to function and the truck had come to a stop in the western or right-hand southbound lane, with all of its wheels on the hard surface.

Because of the defective battery none of the lights on the truck were burning. It was, however, equipped with two red reflectors, each about four inches in circumference and located on the lower rear corners of the body of the vehicle, as required by the regulations of the Interstate Commerce Commission. The body of the vehicle was approximately ten

feet wide and extended to a height of about ten feet above the pavement.

Willie T. Crotts, who was driving the truck at the time it came to a stop, left the vehicle in charge of the codriver, Harvey Hudson, and went to procure the assistance of a mechanic. Before leaving the scene Crotts lighted and placed on the pavement, in the vicinity of the truck, a flare or flares to signify the presence of the disabled vehicle. As we shall presently see, the number and particular location of the flare or flares is a much controverted matter.

During Crotts' absence the McGehee automobile crashed into the rear of the standing truck. Before doing so, the McGehee car left the pavement and skidded along the western shoulder a distance of some eighteen feet. It came to rest against the rear of the truck and was badly damaged in the collision.

The only eyewitnesses to the collision were the plaintiff, Miss Perkins, and her host, McGehee. Miss Perkins' testimony throws no light on how or why the collision occurred. She was paying no particular attention to the road ahead until the moment before the collision when she felt the effect of the brakes on the car, looked up, and saw the large trailer immediately in front of her.

According to the testimony of McGehee, his car was properly equipped with lights and windshield wipers, all of which were in good condition and working order. He further testified that as he approached the point where the collision occurred he was driving at approximately thirty-five miles per hour, the then permitted speed limit. He saw a single flare which appeared to him to be located on the line dividing the two southbound lanes. He was "momentarily confused" and thought the flare indicated that repairs were being made in the left-hand southbound lane. Some miles north, he said, he had seen similar flares indicating such repair work. By the time he realized what the flare actually indicated, his lights "flashed on the back of the truck" and the collision was imminent. He applied his

brakes, his car skidded, and its right side, "just about the cowl," crashed into the rear of the trailer.

About thirty seconds prior to the collision, McGehee said, he had passed a car going north, and in courtesy to its driver had depressed or lowered his lights. Hence, he was not using his brighter lights at the moment of the impact.

McGehee insisted that as he approached the point of the collision only one flare was burning, and that was "just in the rear of the left rear wheel of the trailer," or within six or ten feet of it, and "right on the first white line." He admitted that he saw the flare only "momentarily" before he "saw the truck," and when he was within twenty-five or thirty feet of the rear of the vehicle. When asked whether he could explain why he had not sooner seen the flare or the truck, his reply was, "No, I can't." "I didn't see it."

Crotts testified that before he left the disabled vehicle he put one flare "in the lane" occupied by the truck and about fifty feet to the rear of it, another "on the left of the truck next to the running board," and the third in the lane of the truck and about fifty feet ahead of it.[1] Upon his return, he said, at least one of the rear flares was burning, but he was uncertain as to which.

Harvey Watson, a taxicab driver, who passed the scene shortly before the collision, testified that he saw a single flare placed on or near the double center line of the road.

J. T. Croxton, a State trooper, who arrived on the scene about one hour after the collision, testified that he found a single lighted flare on the dividing line between the two southbound lanes, about sixteen paces to the rear of the

[1] Admittedly, two of these flares were not placed in the positions required by the statute. Section 86-a of the Motor Vehicle Code, as amended by Acts 1938, ch. 84, p. 147 (Michie's Code of 1942, section 2154(133a)), requires the operator of a disabled bus or truck to place on the roadway "three flares or torches," one "in the center lane of traffic occupied by the disabled bus or truck and not less than forty paces therefrom in the direction of traffic approaching in that lane, one not less than forty paces from such bus or truck in the opposite direction, and one at the traffic side of such bus or truck not closer than ten feet from the front or rear thereof; * * * ."

vehicle. He also found an unlighted and damaged flare in the ditch along the western edge of the highway, "at the rear of the trailer."

It is quite apparent from what has been said that the jury had the right to infer that as McGehee approached the disabled truck he was not keeping a proper lookout, if indeed any lookout at all. The road was straight for a distance of 500 feet and his view was unobstructed and unimpaired. He does not claim that he was blinded or confused by the light or lights of oncoming cars. While he says he passed an oncoming car about one-half a minute before the collision, at his stated speed this must have been a considerable distance north of the truck.

All of the witnesses agree that at least one lighted flare was stationed on the pavement in the vicinity of the truck, and the jury may have inferred from the testimony of Crotts that there were two. The jury may likewise have inferred from the testimony of the State trooper (Croxton), that he found a damaged unlighted flare in the ditch near the truck, that the McGehee car, without the knowledge of the driver, had struck that flare.

According to McGehee's further testimony he did not observe either the flare or the large truck itself until he was in close proximity to the flare, and within twenty-five to thirty feet of the rear of the truck. At his admitted speed of thirty-five miles per hour this would have allowed him only a fraction of a second within which to have avoided the collision. He never saw the light from the truck's reflectors at all.

It is true that the visibility was poor, but that required more and not less vigilance on his part.

We do not agree with the argument of counsel for McGehee that his liability is to be determined by whether the single flare, which he admitted he saw, was located near the dividing line between the two southbound lanes, as he says it was, or in the center of the lane occupied by the truck.

In the first place, this argument overlooks the fact that

the jury may have inferred from the evidence that McGehee, without seeing it, struck another flare which Crotts says he left on the pavement and which the traffic officer found in the ditch near the truck.

But aside from this, there is no evidence that if the flare which McGehee admitted he saw had been placed in the lane rather than on or near the dividing line between the two lanes, the collision would have been averted. McGehee made no such claim. He did not say, nor is there any other evidence, that if the light had been placed in the center of the lane occupied by the disabled vehicle—that is, four or five feet to the right of where McGehee says it was—he would have seen it sooner or would have had a better opportunity to avoid the collision. The jury may have inferred that regardless of the exact location of the flare which McGehee saw, he was grossly negligent in not sooner observing the danger signal or signals, or the presence of this large vehicle which blocked the road ahead.

As has been pointed out, the substance of McGehee's testimony is that upon catching a momentary glimpse of the flare he thought it indicated that repairs were being made to the pavement. While, of course, his estimates of speed and distance are only approximate, it clearly appears from his testimony that he saw the flare only a fraction of a second before the collision.

A vehicle moving at a speed of thirty-five miles per hour covers a distance of 51.3 feet per second. According to the table of "Speed and Braking Distance," prepared by the Division of Motor Vehicles, a distance of 49 feet is allowed, after the application of four-wheel brakes in "excellent condition," for stopping a car proceeding at thirty-five miles per hour on a "dry, hard, level surface free from loose material." To this must be added the further distance the vehicle will travel from the time the driver discovers the peril until his mind reacts to the situation and he begins the application of the brakes. See *Stratton* v. *Bergman*, 169 Va. 249, 254, 192 S. E. 813, 815; *Temple* v. *Moses*, 175 Va. 320, 329, 330, 8 S. E. (2d) 262, 265, 266.

It is extremely doubtful, then, whether in the fraction of a second which elapsed between the time McGehee first saw the light and the time the impact occurred, he could have formed any impression of the situation, or could have reasoned that the signal indicated one type of danger ahead rather than another. It is much more likely that his testimony is the result of deductions made since the event, for it is a common thing for an honest witness to confuse the recollection of what he actually observed with what he has persuaded himself has happened. See Moore on Facts, sections 818, 819, 820.

We are of opinion that under the evidence the jury were amply warranted in finding that McGehee was guilty of gross negligence which was a proximate cause of the collision. The facts here are quite unlike those in *Millard* v. *Cohen*, 187 Va. 44, 46 S. E. (2d). 2, in which we affirmed a finding of the lower court that a motorist was not guilty of gross negligence in failing to observe a disabled truck which was parked at an angle on the highway during the night without lights or flares.

Error is assigned to the action of the trial court in not permitting counsel for McGehee to impeach the testimony of Crotts, the driver of the disabled truck, with respect to where he said he had placed the flares shortly after the truck had come to a stop. It will be recalled that Crotts testified that he placed one flare in the lane occupied by the truck and about fifty feet to the rear of it, and another on the left of the truck next to the running board. He was asked, on cross-examination, whether he had not testified during a criminal prosecution arising out of the collision that he had placed the flare first-mentioned within six inches of the dividing line between the two southbound lanes. His reply was, "I don't recall." ·

Counsel for McGehee then offered to prove by the court reporter present at the criminal prosecution that Crotts had testified that he had placed this flare within six inches of this line.

The trial court sustained the objection of counsel for

the Akers Motor Lines that the failure of the witness to "recollect" or "recall" his former testimony did not constitute a sufficient foundation for his impeachment.

We agree with the argument of counsel for McGehee that the statement of a witness that he fails to recollect or does not recall his former testimony or statement constitutes an adequate foundation for his impeachment.

The fact that his present testimony is inconsistent with his prior testimony or statement justifies the showing of the inconsistency, provided he is given an opportunity of correcting the present testimony by directing his attention to the time, place and circumstances of the prior utterance. He cannot escape the consequence by saying he does not recall what he said on the prior occasion. See *Forde v. Commonwealth*, 16 Gratt. (57 Va.) 547, 558; Wigmore on Evidence, 3d Ed., Vol. 3, section 1037, p. 721, et seq.[2]

However, the trial court's ruling does not under the circumstances here constitute reversible error. As we have already said, it was immaterial whether Crotts placed this flare "in the lane," as he testified here, or within six inches of the lane, as it is claimed that he testified on a prior occasion. There is no claim that putting the flare in the former location would have averted the collision.

The final assignment of error is that the lower court erred in not permitting counsel for McGhee to show from the transcript of the testimony taken at the criminal trial referred to above, that Hudson, the codriver of the disabled truck, had made statements relative to the location of the flares which were adverse to his employer, Akers Motor Lines, Incorporated. This evidence was offered to rebut the testimony of officials of the Akers Motor Lines to the effect that that company had made diligent but unsuccessful efforts to locate and produce Hudson at the trial.

It is argued that since Hudson's testimony at the criminal trial showed that it was adverse to the interests

---

[2] While this is the better view, there is authority to the effect that an outright denial is necessary. See Wigmore on Evidence, 3d Ed., Vol. 3, section 1037, p. 721, et seq.; 70 C. J., Witnesses, section 1300, pp. 1121-22.

of his employer, the latter did not in fact desire his presence at the trial, and therefore had not made diligent efforts to locate him. It is further argued that the exclusion of such evidence had the effect of freeing the Akers Motor Lines from the adverse presumption which would otherwise have arisen from the absence of the witness.

In our opinion the trial court's exclusion of the evidence was proper.

It is, of course, true that the unexplained failure of a party to produce a material witness raises a presumption that his testimony would have been adverse. 8 Michie's Virginia and West Virginia Digest, section 9, p. 235, *et seq.* It is also true that when a litigant undertakes to explain the absence of a witness, and to show that he has been unsuccessful despite diligent efforts in procuring his presence, it is proper for the other party to show by competent evidence that his adversay had not in fact been diligent and that the witness was accessible.

In *People* v. *Drury*, 250 Ill. App. 547, 573 (affirmed 335 Ill. 539, 167 N. E. 823), cited by counsel for McGehee, the State, to meet the explanation of the accused of his failure to produce a material witness, offered evidence to the effect that the witness lived within a short distance of the place of trial and was easily available. The admission of such evidence was held to be proper.

But the lack of diligence or want of good faith on the part of the Akers Motor Lines in its asserted efforts to locate and produce the witness was a matter to be established by competent evidence. Even if the proffered evidence had any probative value (which is doubtful to say the least) on the precise point as issue, it was plainly hearsay and inadmissible. The failure of a party to produce available evidence merely raises a presumption that such evidence is adverse to his cause. It does not open the door to the introduction of hearsay evidence by his adversary.

On the whole we find no error in the proceedings below and the judgment complained of is

*Affirmed.*