# Richmond

## Emmett L. Carter, Adm'r, Etc. v. Robert I. Pickering and L. G. Mead.

January 15, 1951.

Record No. 3717.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*R. Carter Scott, Jr., Julien J. Mason* and *W. W. Beverley*, for the plaintiff in error.

*J. B. Browder*, for the defendants in error.

Miller, J., delivered the opinion of the court.

Emmett L. Carter, administrator of Thomas E. Johnson, deceased, filed two notices of motion for judgment against Robert I. Pickering, L. G. Mead, and Charles J. Mabrey. One action was for the death by wrongful act of plaintiff's decedent and the other was for damages to decedent's automobile arising out of the same accident. The two actions were tried together and verdicts returned against defendant, Charles J. Mabrey, in the respective sums of $15,000, and $775, but in favor of defendants, Robert I. Pickering and L. G. Mead. To judgments confirming the verdicts writs of error were awarded the administrator against defendants Pickering and Mead. The judgments are now final as to Charles J. Mabrey.

The sole assignment of error applies alike to both re-coveries and has to do with admission of evidence which plaintiff in error insists was improper and prejudicial.

A clear understanding of the question presented requires a recital of the salient facts surrounding the accident.

Defendants, Robert I. Pickering and L. G. Mead, own and operate a tractor-trailer truck. On the night of the mishap, Pickering was driving this truck in a southerly direction along United States Route No. 2. As it ascended a hill it became disabled, the motor stopped, and it rolled

back and across to the left shoulder and east side of the eighteen-foot hard-surfaced highway. It there came to rest in a jack-knife position with the tractor in the ditch and on the east shoulder. The trailer was across the east side of the traveled portion of the highway and blocked about eight feet of the hard-surfaced north-bound lane.

This disabled vehicle was not equipped with the flares or torches required by section 46-260, Code, 1950 (sec. 2154 (133a) Code, 1942), and none was placed upon the highway. It remained upon the road blocking the greater portion of the north-bound lane for about two hours before the accident happened.

Shortly after the truck was disabled, decedent, a member of a local voluntary fire department, drove up in his Dodge automobile. This car was used by him in the fire department and was equipped with a blue flashing light situated on the front bumper about opposite the driver's seat. It is described as a blinking or pulsating bright blue light that regularly and at intervals of about a second increased and diminished in intensity, thus rendering it more noticeable than a stationary light. This Dodge car with the light operating was placed on the east or north-bound traffic lane slightly south of the disabled truck and facing in a southerly direction so as to be observable and serve as a warning to motorists approaching from that direction.

Though Pickering had none of the approved flares or torches, he did have some red light fusees and secured others from passing motorists. These were lit by him from time to time and some placed on the highway to warn approaching drivers. However, the evidence is conflicting as to whether any of these fusees were lit and upon the road when the accident occurred.

Shortly after decedent's car had been placed in the east traffic lane, south of the truck, other motorists arrived on the scene, some of them approached from the north and some from the south. Those who desired to pass were flagged through but several stopped. Two cars headed north stopped on the east lane. One was placed on the

east half of the hard surface headed north and between Johnson's Dodge and the disabled truck. The other, which belonged to a Mr. Delos, stopped just south of decedent's car but slightly closer to the center of the road and it does not appear that it materially obstructed or interfered with an approaching motorist's view of the flashing blue light on the bumper of the Dodge car. Another car, driven by Gordon Taylor, approached from the north and stopped momentarily in the west or south-bound traffic lane about opposite decedent's car. It thus appears that at this time there was such an accumulation of vehicles on the highway as to block both traffic lanes. Though the blue pulsating light was operating and the lights on the front and rear of various vehicles were observable to approaching motorists, the congestion of cars created a distinct traffic hazard. Decedent, with a flashlight, and Pickering, with a red fusee, were standing or moving around the scene directing traffic. It was at this moment and under these circumstances that Charles J. Mabrey approached in his Ford car from the south. Driving quite rapidly, he crashed into the rear of the car owned by Mr. Delos which was the most southerly vehicle standing in the north-bound lane. The impact knocked that car to the left and into the automobile which had momentarily stopped in the south-bound lane. Mabrey's Ford continued on until it collided with the Johnson car. It then careened to the far edge of the east shoulder and there struck and killed decedent as he fled across the ditch.

Plaintiff elected to sue Pickering and Mead, owners and operators of the disabled truck, and Charles J. Mabrey, as joint tort feasors. The evidence established that Mabrey's negligence constituted a proximate cause of the accident. The other two defendants contended that their negligence, if any, was superseded by the intervening negligence of Mabrey and was, therefore, not a proximate cause of the mishap. However, the trial court concluded that the testimony warranted submission to the jury of the issue of whether or not their negligence constituted a proximate cause of the accident. That we think was correct and

fully justified. *Crist* v. *Fitzgerald*, 189 Va. 109, 52 S. E. (2d) 145; *McGehee* v. *Perkins*, 188 Va. 116, 49 S. E. (2d) 304; *Moore* v. *Virginia Transit Co.*, 188 Va. 493, 50 S. E. (2d) 268.

Trial of the criminal charges arising out of the collision was held some months before trial of these actions. Charles J. Mabrey did not personally appear at the trial of the damage actions, but was represented by counsel who defended the cases in his behalf.

On the night of and a few hours after the accident and also at the criminal trial Mabrey made certain admissions that tended to prove that he had failed to keep a proper lookout or take cognizance of the dangerous conditions existing on the highway and had thus been culpably negligent. During the trial of these damage actions the administrator called as a witness, E. R. Collis, a State highway trooper who had come to the scene of the accident and interviewed two of the defendants. An admission was made to him a few hours after the accident by Charles J. Mabrey, and at the instance of the plaintiff, was offered and admitted in evidence. The witness Collis was asked and answered the following question:

"Q. I see. What statement was made to you by Mr. Mabrey?

"A. Mr. Mabrey said that he was going north on Route 2 and he didn't observe any flares and he didn't see Mr. Delos' automobile until just before the impact."

On cross-examination of the witness by counsel for Pickering and Mead he was asked, without objection by any party, the following questions and gave the following answers:

"Q. With regard to what Mr. Mabrey told you, Mr. Collis, did Mr. Mabrey tell you that he did not see any lights of any nature, or any vehicle, until his headlights picked up the back of the Delos automobile?

"A. Mr. Mabrey stated that he didn't see the automobile until just at the moment of the impact.

"Q. Didn't see any automobile?

"A. Yes.

"Q. Didn't see any automobile?

"A. Didn't see anything.

"Q. In other words, he didn't see anything until he got right there at the moment of the impact?

"A. Yes, sir."

Later in the trial counsel for Pickering and Mead offered in evidence certain other statements against interest made by Charles J. Mabrey. They constitute answers to certain questions propounded Mabrey when he testified in the criminal trial. Their admission in evidence was objected to but they were allowed to be read to the jury.

As taken and preserved by the court reporter at the criminal trial and as offered and admitted in evidence at the trial of these actions, they follow:

"Q. You heard the witness state about what happened at the accident. Just tell what happened as you saw it. A. Well, as far as passing this wrecker I didn't notice it was a wrecker or what it was. But when I went over this hill I wouldn't say how far it was to where the accident occurred, but I didn't see any lights until my lights picked up the tail lights of this Dodge. That is what I seen. When I seen them I tried to go to the ditch to miss him, and I didn't get to the ditch. I hit him on the back. As far as seeing this flagger I didn't see him. I didn't see anyone.

"Q. Was there any car approaching in the opposite lane from the one you were in? You were in the northbound lane? A. Well, I can't say whether it was or not. When I seen this car I didn't think of anything but trying to miss it. Q. This diagram here, the officer has submitted here, here is the wrecked truck that was there, and this he has testified was the position of the four passenger cars. This last one is your car, and this is the position they were in. Did you see this car (Indicating Taylor's.)? It was testified this car was in the opposite lane. Did you see him at any time? A. No, I didn't."

The allowance in evidence of these questions and answers which tended to prove that Mabrey failed to keep a lookout

and that his negligence in this respect constituted an efficient if not the sole proximate cause of decedent's death is the error assigned and complained of.

Defendants in error contend that the evidence was admissible on two grounds. They insist that plaintiff in error first elicited from the witness, E. R. Collis, the admissions made by Mabrey on the night of the accident which were that he had not seen the flares, or the lights on the Delos car, until about the moment of impact. And when the witness Collis was cross-examined by them, no objection was made to his testimony which was that he (Mabrey) "didn't see anything." In view of these circumstances, they say that the administrator is now in no position to object to a full development and disclosure of all admissions made by defendant Mabrey relative to his failure to see the vehicles and the numerous lights there visible to an approaching motorist. It is argued that the evidence and admissions objected to are of the same character as those previously admitted, and, though given at a different time and in somewhat more detail, are in reality, no different from those previously voiced by Mabrey and admitted without objection, and that they were therefore properly received.

Among decisions sustaining this contention are: *Douglas Land Co. v. Thayer Co.*, 107 Va. 292, 58 S. E. 1101; *Portner v. Portner*, 133 Va. 251, 112 S. E. 762; *Whitten v. McClelland*, 137 Va. 726, 120 S. E. 146.

In *Powell v. Young*, 151 Va. 985, at p. 999, 144 S. E. 624, 145 S. E. 731, Mr. Justice Holt quotes with approval the principle announced in *Whitten v. McClelland, supra*:

"It is well settled and obviously a sound general rule that objection to evidence cannot be availed of by a party who has, at some other time during the trial, voluntarily elicited the same evidence, or has permitted it to be brought out by his adversary without objection." 7 Michie's Juris. sec. 56, p. 404, 4 Michie's Digest, p. 271, and other decisions there cited are in accord with this quotation.

The principle is broad and applies to admissions or state-

ments against interest. 31 C. J. S., Evidence, sec. 190, pp. 917, 918.

It is our opinion that the evidence offered by plaintiff in error which tended to prove that Mabrey did not see the Delos car and thus failed to keep a proper lookout, and that elicited on his cross-examination, without objection, which showed that he "didn't see anything" was of the same character and to the same point as were his later admissions at the criminal trial. Such being true, all of his statements against interest on that particular point were admissible though the latter tended to more fully establish his failure to keep an efficient lookout and to conclusively prove culpable negligence.

As the administrator elected to sue the alleged joint tort feasors together, it is contended that the evidence in question was admissible against Mabrey even though no other statement of his of similar character had been received in evidence. Defendants in error assert that it was properly admissible at their instance to establish Mabrey's liability and thus exonerate them or lessen their burden. If not permitted, then they say they would be forever deprived of material testimony tending to prove Mabrey's negligence which in a suit for contribution by them against him, had a judgment been rendered against them in a separate action, would be clearly admissible to establish his liability. *Richmond Coca-Cola Bottling Works* v. *Andrews*, 173 Va. 240, 3 S. E. (2d) 419. If not admissible generally, they contend that it should be received for the specific and limited purpose of proving Mabrey's negligence, and as only a general objection to its admission was made, the court committed no error when it admitted the evidence without limiting its effect.

The specific objection made by counsel for plaintiff in error and the pertinent parts of the colloquy between the court and counsel for all parties follow:

By one of counsel for plaintiff: "My point is, as to this plaintiff it is not proper for anything that Mr. Mabrey

said, where our client wasn't a party to those proceedings, wasn't represented, to come in. * * *"

By counsel for defendant, Charles J. Mabrey: "I wanted to ask Mr. Browder for what purpose this testimony is being introduced?"

By counsel for Pickering and Mead: "Admission against interest. And also as a supplemental statement to prove what the officer said and opened the question up. I think we have a right to show everything that he said.

"It certainly is admissible as an admission against interest as to Mr. Mabrey."

By one of counsel for plaintiff: "If it please the Court, I would like to add my objection as representative of the plaintiff, on the grounds that there is nothing stated by Mr. Mabrey which in any way conflicts with what the officer testified that he did say, and it is not being used to impeach what the officer said, said officer being a witness for the plaintiff, but is merely being used to add evidence in the case which the defendant would not under ordinary circumstances be able to put in."

By the Court: "I will overrule the objections."

█ It is our opinion that in these actions the questioned admissions of Mabrey were not admissible for the purpose of exculpating Pickering and Mead but only to prove Mabrey's negligence. Yet, we think the objection made was general, and as there was no request to limit the effect of the evidence, either before or after the court indicated its ruling, it was before the jury for all purposes.

█ That evidence competent for one purpose is admissible when only a general objection is made to its reception has been held in innumerable decisions, among which are *Lynchburg Cotton Mills* v. *Rives*, 112 Va. 137, 70 S. E. 542; *Schaubuch* v. *Dillemuth*, 108 Va. 86, 60 S. E. 745; *Washington R. Co.* v. *Trimyer*, 110 Va. 856, 67 S. E. 531; *Duncan* v. *Carson*, 127 Va. 306, 103 S. E. 665, 105 S. E. 62.

In *Meyers Sons* v. *Falk*, 99 Va. 385, at p. 388, 38 S. E. 178, Judge Harrison, speaking for the court, said: "If the defendants had desired to have the consideration of the evi-

dence limited to the particular purpose for which it was introduced, they should have asked the court to instruct the jury accordingly."

Of like effect are the following text and references: 1 Wigmore on Evidence, 3rd Ed., sec. 13, p. 301; 3 Am. Jur., sec. 351, p. 96; 4 C. J. S., sec. 290 (4), p. 576; and Michie's Juris., Vol. 7, Evidence, sec. 55, p. 402.

Plaintiff in error relies upon *Leppard* v. *Southern Ry. Co.*, 174 S. C. 237, 177 S. E. 129; *Windham* v. *Howell*, 78 S. C. 187, 59 S. E. 852, and *Shepard* v. *United States*, 290 U. S. 96, 54 S. Ct. 22, 78 L. ed. 196. He insists that the declarations against interest made by Mabrey as admitted in evidence are hearsay insofar as he is concerned and the circumstances are such that their prejudicial effect could not be limited to the declarant alone but that they would in any event inure to the benefit of Pickering and Mead and thus be to plaintiff in error's prejudice. With this we cannot agree.

Had request been made that the statements be admitted solely for the specific and limited purpose of establishing Mabrey's negligence but not against the plaintiff or as tending to exonerate, release or affect the liability, if any, of defendants in error, Pickering and Mead, the court could readily and properly so have instructed. In our opinion, when alleged joint tort feasors are sued together, the admissions against interest by any defendant are admissible at the instance of the plaintiff or at the instance of any co-defendant. However, upon request of plaintiff or of a defendant, the jury should be told of the limited and specific purposes for which it is received.

No request was made to limit the effect and applicability of the admissions and under the facts of these cases and the circumstances arising upon the trial, we are of opinion that no error was committed by the court in admitting the evidence complained of.

The judgments are accordingly affirmed.

*Affirmed.*