# Richmond

### RICHARD LLOYD GAMMON v. ANNIE C. HYDE AND WILLIAM F. GUNTER.

April 28, 1958.

Record No. 4775.

Present, All the Justices.

The opinion states the case.

*R. Carter Scott, Jr.* (*Beverly H. Randolph, Jr.; W. W. Beverly*, on brief), for the plaintiff in error.

*Edward E. Lane* and *Thomas P. Harwood, Jr.* (*Lane, Rogers & Paul*, on brief), for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

Annie C. Hyde, hereinafter referred to as the plaintiff, who was a passenger in a car driven by Richard Lloyd Gammon, was injured when that vehicle collided with a truck driven by William F. Gunter. The plaintiff has recovered a verdict and judgment of $5,000 for damages for her injuries against both Gammon and Gunter. No appeal has been taken by Gunter and the judgment against him has become final. Gammon has appealed claiming that the verdict and judgment against him are contrary to the law and evidence, that the evidence fails to show that he was guilty of any negligence which was a proximate cause of the collision, and that the collision was proximately caused by the negligence of Gunter alone. Gammon also contends that the lower court erred in its rulings on the instructions and on the admissibility of certain evidence.

The collision occurred at the intersection of Highways 297 and 623 southwest of Lynchburg. The Gammon car was proceeding westwardly along Highway 297, while the Gunter truck was proceeding northwardly along Highway 623. Highway 297 is a primary road, paved to a width of about 27 feet. Highway 623 is a secondary road, paved to a width of about 18 feet. The intersection is open and unobstructed and Highway 297, along which the Gammon

car was proceeding, is straight for a distance of nearly a mile east of the intersection. In the center of Highway 623 and 18 feet from the southern edge of Highway 297, there is an island on which is placed a stop sign for vehicles proceeding northwardly along Highway 623, the direction in which the Gunter truck was proceeding. At the time of the collision, which occurred on September 24, 1956, at about 10:00 a. m., a drizzling rain was falling and the roadways were wet.

The occupants of the Gammon car, in addition to the driver, were five women passengers including the plaintiff. They were bound from Richmond to Des Moines, Iowa, to attend a church convention. Gunter, the driver, was the sole occupant of the truck. The occupants of the two vehicles were the only eyewitnesses to the collision.

Harry Bosworth, Jr., a state trooper, who appeared on the scene shortly after the collision, testified as to the positions and condition of the vehicles before they were moved and the marks on the pavement. It is undisputed that the front of the Gammon car struck the right rear wheel of the Gunter truck, causing the rear of the latter vehicle to whirl around so that it came to rest at the northwest corner of the intersection, heading northeastwardly across Highway 623. The Gammon car came to rest in the intersection in the westbound lane of Highway 297. There were no skid marks on the pavement, but there was what the trooper described as a "gouge" mark in the westbound traffic lane of Highway 297. He was unable to determine which vehicle had caused this mark.

Gunter, called as an adverse witness for the plaintiff, testified that in obedience to the sign he brought his truck to a complete stop before entering the intersection. The right front window of the truck had been lowered about one inch from the top and the drizzling rain on the glass partly obscured his view to the right. Despite this, he said, he could see about four-tenths of a mile to the right, the direction from which the Gammon car was approaching. After bringing his truck to what he said was "a dead stop," he looked to the left and then to the right and saw no approaching vehicle. He put the truck in low gear and proceeded through the intersection at a speed of not more than five miles per hour. When the rear of his truck had almost cleared the westbound lane of Highway 297 its right rear wheel was struck by the front of the Gammon car. Gunter further testified that he did not see the Gammon car as it approached the inter-

section and, in fact, never saw it until after the collision. He admitted that he told the trooper at the scene that the collision "was all my fault."

Gammon testified that he approached the intersection at a speed of approximately 40 miles per hour. He saw the stop sign and saw the truck come to a "complete stop" in obedience thereto. When asked by his counsel, "Approximately how far away were you from the truck when you first saw it stop?" his answer was, "Approximately when I first saw him approaching the highway I think I was about 200 feet. I would say 200 feet." He thus described what then occurred: "I judged he was going to stand there until I got out of the way. I stepped down on the gas to get out of the way, and just before I got to the intersection of the road he popped up in front of me, which it wasn't any chance to stop. I done what I could, but it was very little, if any, and to the best of my ability I think I was running 40 miles an hour, not less than that, when I hit him." Further particularizing, he estimated that the truck pulled out in front of him when his car was not "over 20 feet" away. In the meantime he had not observed the truck from the time he saw it stop until the collision was imminent.

Gammon testified positively that he did not stop or diminish his speed before entering the intersection. The occupants of the Gammon car, other than the plaintiff, corroborated his testimony in this respect. However, the plaintiff, Mrs. Hyde, was equally positive that both vehicles came to a complete stop before entering the intersection.

We think that under the evidence adduced the liability of Gammon was for the jury. His liability is not solely dependent, as his counsel argue, upon the right of the jury to accept the testimony of the plaintiff, Mrs. Hyde, that both vehicles came to a complete stop before entering the intersection and thereafter started again and collided in the manner stated. There is other evidence which supports the jury's finding that Gammon was negligent and that such negligence was a proximate cause of the collision.

It is true that with the stop sign against him it was the duty of Gunter, before entering the primary road from the side road, to bring his vehicle to a complete stop. Code, § 46-255, as amended. It was also his duty to yield the right of way to the Gammon car provided the latter was so close to the intersection that he could not, in the exercise of ordinary care, cross the primary highway ahead

of it with reasonable safety. *Umberger* v. *Koop*, 194 Va. 123, 129, 130, 72 S. E. 2d 370, 375. And Gammon had the right to assume that the driver of the truck would obey the law until he (Gammon) saw, or by the exercise of ordinary care should have seen, that the driver of the truck would not do so. *Millard* v. *Cohen*, 187 Va. 44, 51, 46 S. E. 2d 2, 5.

But the pivotal questions here are whether by the exercise of ordinary care Gammon should have seen that the driver of the truck was not going to yield the right of way but would attempt to cross ahead of him, and if so, whether by the exercise of ordinary care he (Gammon) could have avoided the collision. These were questions for the jury.

While, as has been said, Gammon testified that the vehicles were approximately 200 feet apart when he saw the truck approaching and come to a stop, Mrs. Foxhall, one of the occupants in his car, testified that the Gammon car was "perhaps the distance of a city block" from the intersection when this occurred. According to Gammon's own testimony, he saw the truck stop "about even with" the stop sign which is located 18 feet from the southern edge of Highway 297. He did not see the truck again until the moment before the impact. In the meantime, according to the undisputed evidence, it had started up and proceeded at a slow speed of approximately five miles per hour from the stop sign to the southern edge of Highway 297, a distance of 18 feet, and thence almost across the entire 27-foot width of that road, or a total distance of about 45 feet, before its rear was struck by the on-coming Gammon car. Although this movement of the truck through the intersection at slow speed must have required an appreciable length of time and was in plain view, Gammon admitted that he had not observed it until the collision was imminent.

From this evidence, then, the jury had the right to find that by the exercise of ordinary care Gammon should have seen that the driver of the truck was not going to yield the right of way, but was proceeding through the intersection ahead of him. The jury further had the right to conclude that had Gammon, by the exercise of ordinary care, observed the movement of the truck through the intersection, he could have brought his car under control, slowed down, and avoided the collision. His own testimony is that he proceeded up to the point of impact at the undiminished speed at which he had been traveling.

█ Complaint is made of the refusal of the court to grant Instruction "L" which reads as follows:

"The court instructs the jury that as the defendant, Gunter, was confronted by a 'stop sign' on No. 623, it was his duty, not only to bring his automobile to a stop, at such place where he could exercise a proper lookout for approaching vehicles, but it was his duty to look effectively for Gammon's automobile, which was approaching on State Highway Route No. 297, which was a main, arterial highway.

"And the court instructs the jury that the 'stop sign' on No. 623 and the law gave to Gammon, approaching on State Highway Route No. 297, the right of way, and it was Gunter's duty to have yielded the right of way to vehicles lawfully using State Highway Route No. 297 and which were approaching within a reasonable distance, and to have waited until such automobiles had passed.

"And if the jury believe from the evidence that the Gammon automobile was so closely approaching that a reasonably prudent person, in the exercise of reasonable care, should have yielded the right of way to Gammon, and should have waited until Gammon's automobile had passed, and that Gunter did not yield the right of way to Gammon and did not wait until the Gammon automobile had passed, then Gunter was guilty of negligence.

"And if the jury believe from the evidence that such negligence was the sole proximate cause of the accident, then they shall find their verdict for the defendant, Gammon."

No point is made by the plaintiff that in the first paragraph of the instruction it should have been stated that it was Gunter's duty "to look with reasonable care" rather than "to look effectively." Indeed, in her brief she says, "There was no conflict that Gunter failed to keep a proper lookout," that is, that he did not see the Gammon car which was "in such plain view that looking with reasonable care was bound to have discovered it." *Oliver* v. *Forsyth*, 190 Va. 710, 716, 58 S. E. 2d 49, 51.

This instruction correctly outlined Gunter's duty as he approached the intersection (*Umberger* v. *Koop, supra; Otey* v. *Blessing,* 170 Va. 542, 548, 197 S. E. 409, 411) and was vital to Gammon's theory of the case. It should have been granted as the principles were not embodied in any of the given instructions.

█ Complaint is also made of the refusal of the court to grant Instruction "M" which reads as follows:

"The court instructs the jury that Gammon, who was approaching on a main highway, had the right to take it for granted that Gunter, who had stopped on a secondary road, did so with the intention of giving Gammon the right of way. That one who is required to stop, has not the right of way.

"And the court instructs the jury that the action or conduct of Gammon is to be judged in the light that he had a right to assume:

"(1) That Gunter would keep an effective lookout for Gammon's automobile and would properly react to what such a lookout would have disclosed; and

"(2) That Gunter would remain in a stopped position until, in the exercise of reasonable care, under the existing circumstances, Gunter could proceed with safety; and

"(3) If Gammon was in reasonably close proximity to the intersection that Gunter would yield the right of way to him and would permit him, Gammon, to safely proceed west on State Highway Route No. 297.

"And the court further instructs the jury that Gammon had a right to assume all of these things until he, Gammon, knew or, in the exercise of reasonable care, should have known, the contrary."

In the form submitted, the instruction was properly refused. Gammon's right to assume that Gunter had stopped his truck with the purpose of yielding the right of way depended upon the proximity of the Gammon car to the intersection, that is, whether as stated in Instruction "L" above, the Gammon car "was so closely approaching that a reasonably prudent person, in the exercise of reasonable care, should have yielded the right of way" to him and should have waited until the Gammon car had passed. In paragraph "(1)" it should be stated that Gammon had the right to assume that Gunter would keep "a reasonable lookout." *Oliver* v. *Forsyth, supra.*

■ The appellant next contends that the lower court erred in not instructing the jury that the plaintiff was a guest in the Gammon car and that, therefore, he was not liable for her injuries unless he was guilty of gross negligence. Upon the refusal of that instruction, the appellant asked for an instruction which would have submitted to the jury whether she was a guest or a paying passenger in the car. This instruction was likewise refused.

Code, § 8-646.1, provides, *inter alia:* "No person transported by the owner or operator of any motor vehicle as a guest *without payment for such transportation* * * * shall be entitled to recover

damages against such owner or operator for * * * injuries to * * * such guest resulting from the operation of such motor vehicle, unless such * * * injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person * * * being so transported on the part of such owner or operator." (Italics supplied.)

The undisputed evidence is that each of the passengers in the Gammon car, except Gammon's wife, before leaving Richmond had made a contribution of $50 to him to defray in part the expense of operating the car on the trip. There was no requirement by Gammon or specific agreement between him and his passengers that this contribution be made. It was entirely voluntary. Gammon described it as "a contribution to the expense of the car." Mrs. Hyde, the plaintiff, said the contribution was for her "transportation." Another of the passengers stated that the contribution was approximately the amount of her "bus fare" for the trip. The evidence is that on similar occasions the plaintiff and other passengers had made contributions to Gammon for transportation.

Under these circumstances, we think the plaintiff was not "a guest without payment" for her transportation within the meaning of the statute, but was a paying passenger. *Davis* v. *Williams*, 194 Va. 541, 74 S. E. 2d 58. Therefore, the refusal of the requested instructions was proper.

■ Error is assigned to the ruling of the lower court in permitting Gunter, during his cross-examination by counsel for the plaintiff, to qualify or explain his admission to the state trooper that the accident "was all my fault." Over the objection of counsel for Gammon, Gunter was permitted to testify that he meant to say that he was "only partially at fault." The lower court at first ruled that this evidence was not admissible against Gammon, but upon the insistence of counsel for the plaintiff, changed that ruling and allowed it to go to the jury. This latter ruling was error.

The previous admission by Gunter to the state trooper that he (Gunter) was solely at fault for the collision was admissible against Gunter, being an admission against interest. *Southern Passenger Motor Lines* v. *Burks*, 187 Va. 53, 46 S. E. 2d 26. By that admission Gunter assumed sole responsibility for the collision. But Gunter's later testimony, developed by counsel for the plaintiff, that he was only partially at fault for the collision, went beyond a mere explanation of his previous testimony. Its obvious purpose was to place a

like responsibility for the collision on Gammon. As to Gunter, his admission of joint responsibility for the collision was an admission against interest and admissible in evidence. But as to Gammon, it was a mere expression of opinion by Gunter that Gammon, too, was at fault, and was not admissible. See *Yellow Cab Co.* v. *Eden*, 178 Va. 325, 336, 16 S. E. 2d 625, 629; *Carter* v. *Pickering*, 191 Va. 801, 811, 62 S. E. 2d 856, 861; 31 C. J. S., Evidence, § 318-b, p. 1097; 20 Am. Jur., Evidence, § 589, p. 495 *ff*.

For the error of the lower court in admitting the evidence just discussed and for the refusal to grant Instruction "L", *supra*, the judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*