## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Ira P. Cromer & Associates, Inc.

v.

Milton D. Banin

November 18, 1968

By JUDGE ALEX H. SANDS, JR.

This action presents a twofold claim by plaintiff against defendant, the first claim being upon a note from defendant to plaintiff upon which there is a balance due of $228.60 and the second a claim for a balance due upon loans allegedly made by plaintiff to defendant.

Liability upon the note is uncontested.

Liability upon the claim for unsecured loans is denied by defendant upon two grounds. First, defendant contends that the advances made by plaintiff to him were, in fact, payments made pursuant to a drawing account arrangement entered into at the time of employment against which earned commissions were to be credited and that there being no understanding as to liability for any deficit which the application of commissions might leave that there is no liability upon him therefor.

The general principle of law that an agent who is given a stated drawing account against which is to be applied earned commissions, is not personally liable to his principal where the sums paid him under the drawing account exceed the earned commissions, is well established. *See* 3 C.J.S., Sec. 194; *Richmond Dry Goods Co. v. Wilson*, 105 W. Va. 221, 141 S.E. 876 (1928). See also Annotation

found in 57 A.L.R., beginning at page 33, and 165 A.L.R., beginning at page 1371.

It is equally as well settled, however, that where the contract of employment specifically sets out an agreement upon the part of the agent to refund to the company the amount by which advances exceed earned commissions (see *Spirit v. Black Diamond Furniture Works*, 137 Misc. 398, 241 N.Y.S. 194 (1930); *St. Anthony Motor Co. v. Patterson*, 175 Minn. 624, 221 N.W. 719 (1928)), and even where such agreement, though not spelled out, can be implied that the reverse is true and the agent is personally liable. (See *Western Picture Frame Co. v. Tuchin*, 323 Ill. App. 275, 55 N.E.2d 113 (1944)).

The key point in this defense is, of course, the nature of the agreement as to advances which was entered into between plaintiff and defendant at the time of the latter's employment. Did this arrangement establish a "drawing account" for defendant, and if so, was there any understanding that defendant should make good to plaintiff any amount by which his draw exceeded earned commissions?

Defendant testifies that at the time of his employment, or shortly thereafter, it was ascertained that he could not finance his living expenses until he had established a pattern of commissions and that Mr. Cromer, *Sr.*, with whom his negotiations were had, agreed to advance him $100.00 per week against which was to be applied commissions as earned up to the amount of indebtedness. Defendant further testifies that there was no discussion as to liability for any deficit which might arise under the plan. Although Mr. Cromer, *Sr.*, who was the party with whom defendant contracted, is living and presumably available as a witness (there is no evidence to indicate the contrary), he was not called, but plaintiff undertook to rebut this testimony by Mr. Cromer, Jr., who testified as to the general rules of his company which prohibited the payment of salaries or granting of drawing accounts to soliciting agents. He was admittedly not present at the time of the alleged oral arrangements between his father and defendant.

Strongly supporting defendant's position is plaintiff's exhibit # 5, a written memo signed by Mr. Cromer, Sr., and defendant and dated November 9th, 1965, under the

terms of which plaintiff agreed to "allow" defendant $100.00 per week plus commissions against which advance any bonuses were to be credited. This agreement was to continue for three months, at the end of which time if defendant's total business written exceeded $300,000.00, he would be credited with 50% of the then balance due on advancements and "arrangements" made for the repayment to defendant of whatever balance was then due on the advances. This agreement, which is dated shortly after defendant's employment and which was to continue for a three months period, obviously set up a drawing account for defendant during this period and while it indicates that repayment was to be worked out upon some undetermined plan, there is no evidence as to what plan was ever worked out. Defendant testifies that this drawing account was continued until July, 1966, when he severed his employment with plaintiff because he was told that his drawing account was to be discontinued.

The one witness who could have clarified this entire issue was Mr. Cromer, *Sr.*, and the plaintiff having failed to produce him there is a presumption that his testimony would have been adverse to plaintiff. *McGehee v. Perkins*, 188 Va. 116 (1948).

Defendant having produced evidence which satisfactorily establishes an arrangement under which he was to have a $100.00 per week drawing account against which earned commissions were to be credited and plaintiff having failed to establish either an express or implied agreement that any deficiency was to have been paid by defendant to plaintiff, the defendant must prevail upon this portion of plaintiff's claim. (See authorities above cited.)

In view of this ruling it becomes unnecessary to consider defendant's second defense.

Judgment will be entered in favor of the plaintiff upon the note for $228.60 plus 15% attorney's fee which the Court finds to be reasonable, or a total of $262.00.

Judgment will be for the defendant upon the claim for balances due plaintiff from defendant upon the difference between advances made and commissions earned.

As to costs, although defendant admitted liability upon the note he did not make legal tender before trial as he could have done. Had he done so and gone to trial upon the claim for balances, plaintiff would have been

assessed with the costs. Having failed to make legal tender as to the note before trial, all costs of the proceeding will be assessed against defendant as plaintiff prevailed upon a part of his claim.