## Richmond

## CATHERINE K. UNDERWOOD V. CITY OF RADFORD.

April 22, 1977.

Record No. 760162.

Present, All the Justices.

*Philip M. Sadler (Robert L. Morrison, Jr.; Gilmer, Sadler, Ingram, Sutherland & Hutton*, on briefs), for plaintiff in error.

*John B. Spiers, Jr. (Spiers, Spiers & Mink,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

The City of Radford recovered a judgment in the lower court for $1,709.69, representing damages to its Datsun pickup truck allegedly sustained in a collision between the truck, operated by its employee, Herbert C. Farlow, and a Chevrolet sedan automobile owned and operated by Catherine K. Underwood. At the trial, and after the introduction of all the evidence, the court

granted the city's motion to strike Underwood's evidence, entered summary judgment on the question of liability, and submitted the question of damages to the jury. The court apparently held as a matter of law that the driver of the truck was free of negligence and that the city was entitled to recover by reason of Underwood's negligence.

This accident occurred in the intersection of Preston and Seventh Streets in Radford at approximately 12:40 p.m. on January 1, 1975. The streets were blacktop, straight, level and without defects. The weather was clear and the roadway was dry. The intersection was controlled by a stop sign which required traffic traveling on Seventh Street to stop before crossing Preston Street. The city's truck struck and damaged the left rear quarter panel, fender and wheel of the automobile. The front of the city's vehicle was damaged.

The speed limit was 25 mph. Mrs. Underwood was driving west on Seventh Street searching for the residence of her employer, and was accompanied by her 12-year-old son. Farlow was driving the city's truck in a northerly direction on Preston Street and was being followed by another vehicle operated by Jack Songer, with Larry Chewning as a passenger. Farlow and Songer were en route to the city shops to look at certain equipment owned by the city which Songer and Chewning were interested in buying.

The accident was investigated by Captain G. S. Williams, of the Radford police department, who did not recall seeing skid marks made by either vehicle leading to the apparent point of impact. He testified that Mrs. Underwood told him that she did not see the stop sign on Preston Street and did not stop before entering the street; and that she pulled into the intersection without ever having seen the pickup truck before it struck her. The officer said that appellant estimated her speed at about 30 mph.

Larry Chewning estimated the speed of the Songer and Farlow vehicles at 20 to 25 mph, and said that Farlow was driving on the right side of the street. Chewning said that Mrs. Underwood entered the intersection without stopping, in front of Farlow's truck. He was unwilling to estimate the number of feet either the Songer vehicle or the city truck were distant from the intersection at the time, but said that Farlow "was right on the intersection when the Underwood vehicle just popped out in

front of him", and that "the accident happened so quickly that Farlow did not have time to stop".

Farlow also estimated his speed at 20 to 25 mph. He said that he was familiar with the streets and knew the traffic on Preston Street had the right-of-way over traffic on Seventh Street which was controlled by a stop sign. He said that the intersection was free of traffic as he approached it; that he did detect some movement near the street, to his left and in the vicinity of some shrubbery, and that, thinking it could have been a child or a dog, he glanced momentarily to the left and immediately glanced back to the front. He said that the Underwood vehicle was then in front of him in the intersection, and that "he tried to hit his brakes and cut" but did not have time to do so. He stated that as he approached the Seventh Street intersection his view was unobstructed; that he did not see the Underwood vehicle approaching the stop sign; that his glance to the left may have kept him from seeing her; and that he did not see the car until a moment before "the crash".

Mrs. Underwood, whose home was in Christiansburg, testified that she was not familiar with the streets of Radford; that on the day in question she was en route to her employer's home which was located on Seventh Street; that she did not know its exact location and had the address written on a piece of paper; and that as she approached Preston Street either she or her son saw one or more of her employer's trucks at a house located on the left side of Seventh Street and beyond the Preston Street intersection. She said that she stopped before entering Preston Street and looked for oncoming traffic; that she did not see the Farlow truck approaching her and enter the intersection. She testified that she "caught a glimpse of the truck just about at the moment of impact". She did not recall telling Captain Williams that she did not stop but "would not deny that she had done so". She confirmed that she told the officer that she did pull into the intersection without seeing the other vehicle.

Mrs. Underwood's son, Douglas, also testified that at the time of the accident they were trying to find the home of his mother's employer, and that he detected the employer's trucks on Seventh Street across the Preston Street intersection and pointed them out to his mother. He said that before his mother entered the intersection she stopped and he looked to the right while his mother looked to the left. Douglas said he saw no traffic to the

right and did not see the truck before the collision. He also testified that he and his mother had discussed the accident later and that "he told her she had stopped at the yield signs before they got to Preston Street".

An analysis of numerous intersection cases cited by the parties and a comparison of the facts therein would needlessly prolong this opinion. All the authorities cited hold that whether negligence is a question for the jury or one of law to be decided by the court depends upon the facts in each case. *Brown* v. *Damron*, 197 Va. 309, 89 S.E.2d 54 (1955).

In *Remine and Meade* v. *Whited*, 180 Va. 1, 6, 21 S.E.2d 743, 745 (1942), we said:

> "When two automobiles, approaching each other at right angles on level ground, traveling slowly and under perfect control in daylight with visibility good, in plain sight of each other and with no intervening traffic, collide, we have a typical case of continuing and occurring negligence.
>
> " 'If, *without more*, two automobiles, traveling upon intersecting highways, were to run into each other at the point of intersection, plainly there would be no recovery by either driver. The rights of each would have been equal and their negligence the same. The chance which each had to avoid the accident was common to both. . . .' " [Emphasis supplied]

In the case under review, neither Mr. Farlow nor Mrs. Underwood saw the other until the instant prior to impact. There is nothing in the record to indicate that there were any obstructions which prevented either driver from having seen the approach of the other. Most certainly, had there been obstructions or any explanation for the failure of these parties to see the other, counsel would have shown this fact.

If we accept the testimony of Farlow, Chewning and Captain Williams, we find that appellant, without stopping in obedience to the mandate of a stop sign, drove her automobile directly into the path of an oncoming truck at a controlled intersection and at a speed approximately five miles in excess of the speed limit. On the other hand, if the testimony of Mrs. Underwood and her son is accepted, it would appear that, although she stopped, she entered the intersection without looking to her left for vehicles proceeding north on Preston Street; or that she looked at a time

when her looking was not effective; or that if she looked she failed to see what should have been seen.

■ A stop sign is notice that danger lies ahead and that one must stop at a point from which, in the exercise of ordinary care, he can see traffic moving on the street he proposes to enter. The duty to look requires not only the physical act of looking but reasonably prudent action to avoid the danger which an effective lookout would disclose. *See Umberger* v. *Koop*, 194 Va. 123, 131, 72 S.E.2d 370, 375 (1952).

The accident occurred in the northeast quadrant of the intersection in the northbound lane of Preston Street and in the westbound lane of Seventh Street. One explanation for its occurrence is that Mrs. Underwood, intent on finding her employer's home and with her attention directed toward the trucks parked across Preston Street, failed to observe the approaching city truck. It was negligence as a matter of law for her to have entered the intersection when the truck was necessarily at a point dangerously near and in plan view.

■ The remaining question is whether Farlow's failure to have observed the approaching Underwood car, and to have taken evasive action to prevent an accident, constituted negligence which contributed to cause the accident. He admitted that he did not see the Underwood vehicle until it was in the intersection and immediately in front of him. Farlow said it was then too late for him to apply brakes or turn. The fact that he thought he detected some movement in the shrubbery to the left of the street explains his statement that he glanced momentarily to his left. However, it does not satisfactorily explain why he never saw the approaching Underwood vehicle. His knowledge that the intersection was controlled by a stop sign and that he had the right-of-way does not excuse him from exercising ordinary care.

Assuming that both drivers had a clear view of each other, a jury might have found that by the exercise of ordinary care, by maintaining a proper lookout and by maintaining proper control of his vehicle, Farlow could have seen Mrs. Underwood approaching and noted that she was not going to yield the right-of-way, but was proceeding through the intersection ahead of him. From the testimony it appears that he maintained a

speed of 20 to 25 mph up to the moment of impact. *See Gammon v. Hyde,* 199 Va. 918, 103 S.E.2d 221 (1958).

It is our conclusion that while Mrs. Underwood was clearly guilty of negligence as a matter of law which proximately contributed to cause the accident, the question of contributory negligence on the part of Farlow was properly one for the jury.

In *Semones v. Johnson,* 217 Va. 293, 294-95, 227 S.E.2d 731, 733 (1976), we said:

> "In *Williams* v. *Vaughan,* 214 Va. 307, 309, 199 S.E.2d 515, 517 (1973), we discussed the rule, and the reason for the rule, governing trial courts in their consideration of motions to strike:
>
>> " 'When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should grant the motion only when "it is conclusively apparent that plaintiff has proven no cause of action against defendant", *Leath* v. *Richmond, F. & P. R.R.,* 162 Va. 705, 710, 174 S.E. 678, 680 (1934), or when "it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it." *Green* v. *Smith,* 153 Va. 675, 679, 151 S.E. 282, 283 (1930). This is so because when a judgment based on a granted motion is reversed on appeal, a new trial must be conducted; when a plaintiff's verdict follows a denied motion, whether the verdict is set aside or confirmed by judgment below, this court may enter final judgment, thereby obviating the delay and expense of a new trial.'
>
> "In *Williams* v. *Chesapeake Bay Bridge & Tunnel District,* 208 Va. 714, 717, 160 S.E.2d 573, 575-76 (1968), we emphasized that the trial court should consider not only the evidence challenged but also all inferences fairly deducible therefrom:
>
>> " 'We have repeatedly said that in ruling on a motion to strike plaintiff's evidence all inferences which may be fairly drawn from the evidence must be considered most favorably to the plaintiff, and where there are several inferences which may be drawn, *though they may differ in degree of probability,* the court must adopt those most favorable to the party whose evidence it is sought to have struck out,

unless the inferences be strained, forced or contrary to reason. [Citations omitted]' (Emphasis supplied)."

In the instant case there are several inferences which may be drawn, though they may differ in the degree of probability, from the failure of appellee's driver to observe the Underwood vehicle before the moment of impact.

Accordingly, the judgment of the lower court is reversed and set aside, and the case is remanded for a new trial consistent with the views herein expressed.

*Reversed and remanded.*