# Richmond

## Lloyd Barner, An Infant, Etc. v. James Whitehead.

December 2, 1963.

Record No. 5664.

Present, All the Justices.

The opinion states the case.

*Louis Ellenson* and *Alvin B. Fox* (*H. Rexford Taylor; Taylor & Ellenson,* on brief), for the plaintiff in error.

*Arthur W. Woltz* (*Jones, Blechman, Woltz & Kelly,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Lloyd Barner, an infant seven years of age, instituted this action by Earnestine L. Barner, next friend and mother, against James Whitehead for damages. The motion for judgment alleged that the plaintiff was seriously injured while "crossing 17th Street" in Newport News, when he was struck, knocked down and dragged by a vehicle operated by James Whitehead, the defendant, in a negligent and careless manner. The jury returned a verdict for the defendant upon which judgment was entered, and we granted the plaintiff a writ of error.

In his assignments of error, the plaintiff contends that the trial court erred (1) in excluding certain evidence; (2) in granting certain instructions, and (3) in refusing to set aside the verdict as being contrary to the law and the evidence, and award a new trial.

The defendant assigned cross-errors. He challenges the correctness of the court's rulings in refusing to strike the plaintiff's evidence at the conclusion of plaintiff's evidence and again at the conclusion of all the evidence.

The evidence consisted of the testimony of James Whitehead, the defendant; Audrey Whitehead, his thirteen-year-old daughter, and H. A. Memory, a traffic officer who investigated the accident.

The mishap occurred around 5:00 p.m. on February 17, 1962, on 17th street, between Jefferson and Terminal avenues, in the city of Newport News. At this point 17th street was approximately 40 feet wide from curb to curb, black topped, straight and level. It was a two-way street with parking permitted on both sides. The weather was clear, the street was dry, and vehicular lights were not needed for safe driving. The speed limit was 25 miles per hour.

The defendant was called as an adverse witness for the plaintiff. He testified that he was traveling south on Jefferson avenue and turned right or west on 17th street at a speed between 15 and 20

miles per hour. This particular area is composed principally of apartment buildings and the defendant knew that many children lived and played in the area as he resided nearby and traveled the street daily. As he made the turn into 17th street, he observed children playing "in the project yard", which he described as a space between the apartment buildings. For this reason the defendant said he reduced his speed to 10 miles per hour. On his right or the north side of the street were three parked cars. As the defendant passed the second parked vehicle which was about 125 feet west of Jefferson avenue, the right front of his car struck a tricycle on which the plaintiff and James Moore were riding. The Moore child was "knocked" from it. The plaintiff remained on the tricycle which was caught under the front bumper and dragged along with the plaintiff for a distance of about 60 feet before it became disengaged and clear of the car. The defendant stated that the right side of his vehicle was about 3 feet from the left side of the parked cars while he was in the act of passing them.

The defendant further testified that the plaintiff and the Moore child were out in the street "before I could see them". When asked where the tricycle came from he replied: "Betwix two cars" parked on his right. He said he did not actually see the tricycle and the boys come from between the two parked cars. The first he saw of them was when "we had connected together." When pressed why he knew the boys came from between the two cars, he stated that he was "at the side of the cars when the lick was hit" and "I sure could see in front of me."

In response to questions why he did not stop the car immediately, he had this to say: "Well, why I didn't stop I didn't have nobody to think for me, I took my own precaution" and "I just couldn't stop with the child underneath the wheel or underneath the car." He explained that he thought he would do more harm to the child by applying his brakes and mashing him under the tricycle than he would by stopping gradually.

Officer Memory, a witness for the plaintiff, testified that he was notified of the accident and arrived at the scene after the boys had been taken to the hospital. He said that the defendant informed him his car had not been moved from the place it originally stopped; that the defendant told him the tricycle which the boys were riding entered the street between two parked cars, which were pointed out to him; that the distance from that point to the place the car stopped

was about 70 feet and approximately 60 feet to the point where the tricycle became separated from the car, and that he found no skid marks on the street. He stated that the defendant gave him this statement:

" 'I turned right off Jefferson Avenue onto 17th Street. I saw a gang of children playing. I did not see any wheels or tricycles. As I got to the group of children I slowed up. The next thing I saw were two children on a wheel, from behind a parked car. I applied my brakes, and after I saw he was hung with me I tried to protect him as best as I could by easing along until I got the wheel clear of him. Then I stopped.' "

Audrey Whitehead, who was riding in the front seat of her father's car, testified as a witness on his behalf. She stated that she saw some children "playing in the yards" and two boys with a bicycle on the corner as they turned into 17th street. Thereafter, she did not see any other children until she heard "a noise" or "a little bump" and saw the boys involved in the accident. She said her father was "just driving" and was not talking at the time.

In the first assignment of error the plaintiff contends that the court erred "by forbidding inquiry concerning the defendant's actual knowledge of the habits of children at play, the need to protect children at play, and the defendant's awareness of school signs or posters urging motorists to protect children in the area." The court sustained the defendant's objection to such inquiry on the ground that it was irrelevant. The plaintiff states in his brief "the Trial Court over timely objection and the exception of the plaintiff, closed the door to inquiry along these lines." But there is nothing in the record before us showing that an objection or exception was made by the plaintiff to the court's rulings and hence they will not be considered here. Rules of Court, 1:8. *Brown* v. *May*, 202 Va. 300, 308, 117 S. E. 2d 101.

The next assignment of error relates to the granting of Instructions Nos. F. and H. Instruction No. F. reads:

"The Court instructs the jury that if you believe from the evidence in this case that the infant plaintiff ran or rode from the yard or sidewalk into the path of the defendant's car at a time when in the exercise of ordinary care and prudence the defendant could not avoid colliding with him, then the defendant, if he was otherwise acting prudently, was not guilty of negligence."

The plaintiff's sole objections to this instruction in the trial court

was "there is no evidence here of any unavoidable accident, and it is contrary to any evidence here in this court today." The plaintiff argues that it is an unavoidable accident instruction. We think it is a negligence instruction. However, in either event it was not error to grant it.

■ Instruction No. H. provides:

"The Court instructs the jury that if you believe from the evidence in the case that the defendant after the impact was acting in a sudden emergency then his actions are not measured by ordinary means but allowance must be made for the actions in the emergency; the defendant is chargeable only with what a reasonably prudent man would do under similar circumstances."

The plaintiff contends that the doctrine of sudden emergency was not applicable here; because (1) under the evidence there was no sudden emergency, and (2) if a sudden emergency did exist it was created by the defendant's negligent conduct in not keeping a proper lookout. There was, however, no showing that the defendant was negligent in any way prior to striking the plaintiff. A sudden emergency certainly existed at that time. But the plaintiff contends that the defendant was shown to be negligent by his actions in failing to stop the vehicle immediately after striking the child. The defendant explained he did not stop suddenly because he thought less harm would be done to the child by a gradual stop. He decided upon this course in a sudden emergency. Even if his judgment was an erroneous one this would not necessarily be negligence. *Davis* v. *Powell*, 140 Va. 649, 662, 125 S.E. 751; 38 Am. Jur., Negligence, § 41, p. 686.

"If an emergency really existed, then what a reasonable man should or should not have done is in the realm of inference. It is to be ascertained by a fair appraisal of the facts proved and a reasonable consideration of the usual and ordinary reaction of men confronted with similar situations. The composite judgment of a jury in this respect is usually the best means and truest test by which to ascertain and arrive at the reasonable and proper inference to be ultimately drawn." *Virginia Transit Co.* v. *Durham*, 190 Va. 979, 995-6, 59 S. E. 2d 58; *Daniels* v. *Transfer Co.*, 196 Va. 537, 547, 84 S. E. 2d 528.

Here, the jury by their verdict decided this issue and concluded that the defendant acted after the impact in a sudden emergency and as a reasonable prudent man would have acted under similar cir-

cumstances. We hold that, under the evidence presented, the trial court was correct in giving Instruction No. H.

■ Finally, the plaintiff contends that the court erred in not setting aside the verdict as being contrary to the law and the evidence and grant him a new trial. He contends that, aside from the fact that the jury was erroneously instructed, the evidence clearly shows that the defendant was guilty of negligence which was the sole proximate cause of his injuries.

The motion for judgment alleged that the plaintiff was injured while crossing the street. A mere showing that the collision occurred does not establish negligence on the part of the defendant. The onus was on the plaintiff to prove that he was in the street a sufficient time before the impact, and a sufficient distance ahead of the automobile, for the defendant, in the exercise of ordinary care, to have seen him and avoided striking him. *Hoier, Adm'r* v. *Noel,* 199 Va. 151, 154, 98 S. E. 2d 673. This, the plaintiff has utterly failed to prove.

Neither the plaintiff nor James Moore, the other witnesses to the collision, testified. This unexplained failure to produce witnesses possessing peculiar knowledge concerning the facts essential to the plaintiff's case raises a presumption that their testimony would have been adverse. *McGehee* v. *Perkins,* 188 Va. 116, 126, 49 S. E. 2d 304; *Robbins* v. *Power Company,* 204 Va. 390, 394, 131 S. E. 2d 274. Under the evidence, the only fair conclusion that can be reached is that the plaintiff came from between two parked cars into the path of the defendant's vehicle, which was right upon him and proceeding at a reasonable rate of speed under the circumstances, and that the defendant could not avoid the collision in the exercise of ordinary care. There was ample credible evidence to support the jury's verdict for the defendant.

In the view we have taken of the case, it becomes unnecessary to discuss the defendant's assignments of cross-error.

The judgment appealed from is

*Affirmed.*