## Staunton

### CLIFTON LESTER NICHOLS, AN INFANT, ETC. v. WILLIAM PAUL BRIZENDINE, AN INFANT, ETC.

September 5, 1969.

Record No. 6947.

Present, All the Justices.

*Richard C. Rakes* (*Gentry, Locke, Rakes & Moore,* on brief), for plaintiff in error.

*W. H. Overbey* (*W. H. Overbey, Jr.; Thomas L. Phillips; David*

*T. Petty, Jr.; Overbey & Overbey; Kizer & Phillips*, on brief), for defendant in error.

SNEAD, J., delivered the opinion of the court.

William Paul Brizendine, who was a guest passenger in an automobile operated by Clifton Lester Nichols, defendant, instituted an action against Nichols to recover damages for personal injuries he sustained in a single car accident resulting from the operation of the car in an allegedly grossly negligent manner. At the conclusion of plaintiff's evidence, defendant moved to strike on the ground that "a *prima facia* case of gross negligence" had not been established. The motion was overruled. Whereupon defendant rested his case and renewed his motion to strike which was again overruled. The jury returned a verdict in favor of plaintiff for $25,000. A motion by defendant to set aside the verdict was taken under advisement, and by order entered October 20, 1967, the trial court overruled the motion and entered judgment in accordance with the jury verdict. We granted defendant a writ of error.

It was stipulated by counsel that the decision by this court in this case would control a companion case, *Clifton Lester Nichols, an infant v. John Russell Anthony, an infant, etc.* (Record No. 6948).

The crucial question presented for our determination is whether the evidence adduced was, as a matter of law, insufficient to establish that defendant was guilty of gross negligence.

On January 29, 1967, at about 9 p.m. Nichols, the defendant, stopped his 1959 Chevrolet sedan, which was in good mechanical condition, on State Route 622 west of the town of Rustburg in Campbell county. There by chance he met his friends John Russell Anthony and William Paul Brizendine who had been riding around earlier in the latter's automobile. Each of the three boys was 17 years old. Brizendine and Anthony entered Nichol's car and sat on the front seat. Nichols then proceeded to drive west on Route 622, with no particular destination in mind. The accident occurred after they had traveled about one-half mile from the point of departure. Over this distance Nichols negotiated without difficulty several curves in the road that precede a straight stretch which begins at the top of a hill and extends on a 5.3% downgrade for about 642 feet. At this point the road curves sharply to the right and starts uphill on about a 5% grade. Approximately 100 feet beyond the beginning of this curve there is a dip or hump in the road.

When Nichols reached the straight stretch of road he accelerated the speed of his vehicle to "between sixty and seventy miles an hour, about sixty miles an hour or better" and when the car hit the dip or hump in the curve it continued straight across the road onto the opposite shoulder and head-on into the trunk of a large twin poplar tree situated about eleven feet from the left edge of the hard surface. According to Trooper R. H. Keys, who investigated the accident, the automobile left skid or tire marks of 46 feet which "went right on up to the vehicle sitting against the tree". The car was completely demolished and the three boys were severely injured and hospitalized.

Route 622 is a blacktop secondary State road eighteen feet wide and has a level dirt shoulder on each side approximately six feet wide. The weather was clear and the road was dry. There were no traffic control signs at the time of the accident.[1] The speed limit was 55 miles per hour.

The record shows that the three boys were familiar with the curve where the collision occurred, but that Nichols was more familiar with it because he had traveled the road "quite a few times", and that Brizendine and Anthony knew that Nichols was acquainted with the road and assumed he would slow down before entering the curve. Brizendine, when asked to state what he knew "about going into the curve", testified: "Going into the curve—well, in fact he had such an excessive rate of speed he hit this dip, in my opinion, hit this dip and the car just left the road. I didn't have time to say anything and nothing I could have said would have done any good. It was all in a split second."

Nichols remembered nothing about the accident and hence did not testify concerning it. Anthony remembered and testified to the events up to a point about 15 yards from the beginning of the curve. Brizendine's recollection was clear as to the events which occurred up to the time the car hit the tree.

Due to a conflict which arose in the evidence concerning the appearance of the accident scene as shown by plaintiff's photographs and defendant's plat, the court permitted the jury to view the scene.

The trial court, in a written opinion overruling the motion to set aside the verdict, stated that the curve was a dangerous one, and that under the evidence "the jury had a right to find speed and inattention in this accident". The court noted that "speed alone" is not gross negligence and further stated:

---

(1) Since the accident occurred there have been erected reflector posts, a curve sign and a sign stating: "*35 Miles an Hour Safe Maximum Speed*".

" * * * I do not agree, however, that the facts here disclose that the accident was caused simply because 'the defendant went around the curve a little too fast.' He had full knowledge of this road and the nature of the curve where he wrecked. * * * The accident happened at night when a reasonable driver should be particularly careful. The jury could well have decided that * * * the defendant deliberately *accelerated* his car to a speed of 60 to 70 miles per hour and tried to make the curve at this speed without slowing. He lost control at the 'dip,' crossed to the wrong side of the road and hit a tree almost eleven feet from the road, destroying the car and seriously injuring everybody. The jury could have concluded from the evidence and the view that a maximum safe speed for this curve at night was far below 'sixty, or better.' I do not say that the defendant's actions amounted to gross negligence as a matter of law; neither can I say that they did not." Thus, the court concluded that the issue of gross negligence was a jury question.

We have many times said that proof of gross negligence depends upon the facts and circumstances of each particular case. It is only when reasonable men may not differ as to the conclusion of fact to be drawn from the evidence that the question of gross negligence becomes one of law for the court to decide regardless of the jury verdict. *Alspaugh* v. *Diggs*, 195 Va. 1, 5, 77 S.E.2d 362, 364.

" 'Gross negligence is * * * conduct showing such indifference to others as constitutes an utter disregard of prudence amounting to complete neglect of the safety of the plaintiff guest, that is, such a degree of negligence as should shock fair minded men although something less than wilful recklessness.' " *Laughorn* v. *Eanes*, 207 Va. 584, 587, 151 S.E.2d 378, 380.

Since the plaintiff secured a verdict in his favor, which was approved by the trial court, all conflicts in the evidence and all reasonable inferences which may be drawn therefrom have been resolved and must be viewed in plaintiff's favor. The judgment will not be disturbed unless it is plainly wrong or without credible evidence to support it. *Washburn* v. *Dana*, 199 Va. 579, 584, 100 S.E.2d 708, 711.

As noted the evidence shows that Nichols had traveled the road "quite a few times". On this occasion when he reached the straight portion of the narrow road which was on a slight downgrade he accelerated the speed of his car to "between sixty and seventy miles an hour, about sixty miles an hours or better". It could be fairly inferred that the increase in the speed was deliberate since it took place

over a distance of about 642 feet on the straight stretch and then 100 feet into the curve. Even if the acceleration was not deliberate he had ample time and distance to slow down to a safe speed before reaching the curve with which he was familiar and from his failure to do so the jury could have inferred such inattention and lack of proper control as to constitute gross negligence.

After hitting the hump or dip the car skidded 46 feet and collided head-on with a tree. The picture exhibits show that the vehicle was completely demolished. Had the car not struck the tree it unquestionably would have skidded a considerable distance farther.

It is true that Brizendine and Nichols were engaged in a conversation when the automobile entered the straight portion of the road, but that is no excuse for a driver not to keep a proper lookout and keep his car under control. It is also true that neither Anthony nor Brizendine complained about the way Nichols was driving. They testified that they knew Nichols was familiar with the road and curve and assumed that he would slow down for the curve. According to Brizendine, when Nichols entered the curve, "I didn't have time to say anything and nothing I could have said would have done any good". The jury was instructed on contributory negligence and by their verdict found such did not exist.

As the trial court stated, the curve in question was a dangerous one. The picture exhibits clearly support that description. The jury took a view of the scene and saw the nature of the road and curve. They could have concluded that the excessive speed at which Nichols was operating his vehicle in the nighttime, over a narrow road and curve, coupled with his knowledge of the nature of the road and of this particular curve, reflected an utter disregard of prudence amounting to a complete neglect of the safety of his guest passengers. Under the facts and circumstances of this case we cannot say, as a matter of law, that Nichols was not guilty of gross negligence. Reasonable men may differ as to whether or not the evidence established gross negligence. Hence, the court properly submitted that issue to the jury.

We find that the other assignments of error, which were not pressed in oral argument, contain no reversible error.

Accordingly, the judgment appealed from is

*Affirmed.*