# Richmond

## ALICE L. FOSTER, ADMINISTRATOR, ETC., ET AL. v. DALE E. WILLHITE.

March 9, 1970.

Record No. 7041.

Present, All the Justices.

*Harvey B. Cohen; George W. Shadoan* (Md.) (*Tolbert, Lewis and FitzGerald; Shadoan and Mack* (Md.), on brief), for plaintiffs in error.

*John J. Daly* (*Joseph Dyer; Anthony J. Siciliano; Robert L. Ellis; Paul F. Sheridan; Siciliano, Daly and Ellis,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Alice L. Foster, Administrator, and William B. Cummings, Co-administrator, of the estate of Jeremy Foster, deceased, obtained a $35,000 verdict against Dale E. Willhite for the wrongful death of plaintiffs' decedent. Foster was riding in an automobile owned and operated by Willhite which was involved in an accident. The ver-

dict was set aside by the lower court and final judgment entered for Willhite. At the same time the court sustained the jury's verdict in favor of a co-defendant, Bernard Gruber.

The decisive question presented is whether the evidence is sufficient to convict Willhite of gross negligence.

Plaintiffs instituted action against Willhite and Gruber in March, 1966, alleging the wrongful death of Jeremy Foster, arising out of an automobile accident which occurred on September 24, 1964 in Fairfax County. At the conclusion of plaintiffs' evidence, defendants Willhite and Gruber made motions to strike, which were overruled. The trial court ruled that as a matter of law plaintiffs' decedent was a guest passenger in Willhite's automobile, to which holding the plaintiffs excepted.[1] For the purpose of this decision, decedent will be regarded as a guest. No evidence was offered by the defendants, and the jury returned a verdict in favor of plaintiffs against Willhite and in favor of defendant Gruber. We granted a writ of error to the judgment of the trial court setting aside the verdict against Willhite.

At the time of his death, Jeremy Foster, age 30, married, the father of four children, was employed as a mathematician at the Center of Naval Analyses in Quantico, Virginia. He traveled from his home in Vienna, Virginia to his work in Quantico by automobile. On the date of the accident Willhite was due to report for work at the Center. The night prior to the accident, Willhite phoned Foster and arranged for Foster to ride with him the next day.

On the morning of September 24th, at approximately 7:43 A. M., while en route to Quantico, the accident occurred, resulting in Foster's death. At the time, Willhite was driving his Austin-Healey sports automobile on Highway 95 (Shirley) at a point just north of the Springfield Exit. This highway was a divided road with two south and two north traffic lanes, separated by a 28-foot-2-inch grass median strip.

Willhite entered the outside or west lane of Highway 95 from the ramp that feeds southbound traffic from Highway 495. A short distance from the intersection of Routes 495 and 95 is the Springfield Exit, which leads off 95 to the right or west.

Defendant testified that he entered Highway 95 behind a truck

---

(1) Plaintiffs assigned error to the action of the trial court in holding their decedent to have been a guest and not a passenger. In view of our decision, we do not discuss this issue and assignment

whose driver gave a signal indicating that it would turn right at the Springfield Exit. It was then that Willhite turned or pulled to the left into the inside lane with the intent of passing the truck. He stated that his car was in its fourth or highest gear; that he accelerated possibly to 50 miles an hour; and that while in the act of passing the truck, he noted a vehicle, approximately 200 yards south in the outside lane, signaling that it was going to pull into the inside lane. Apparently at about this time, and for no reason assigned by Willhite, he lost control of his vehicle. It skidded sideways across the median strip, a distance of 126 feet 3 inches, into the inside north traffic lane of Highway 95, and then in that lane skidded a further distance of 49 feet 5 inches, until it collided with a Ford Falcon automobile driven by Gruber.

Gruber was proceeding north on Highway 95 in heavy morning traffic and at a speed of approximately 55 to 60 miles an hour. He said that the first time he saw the Willhite automobile was when it entered his lane of traffic. He estimated the car to have been approximately 1000 feet from him, traveling at a speed of 60 to 65 miles per hour, and stated that approximately 2 to 5 seconds elapsed between the time he saw it and the collision.

The Gruber car left skid marks of 81 feet 3 inches prior to impact. Willhite's car was knocked backwards in a northerly direction 13 feet 5 inches. The marks of the Gruber car veered to the right but remained in the inside north lane. The left front of the Gruber vehicle collided with the right side of the Willhite car. Foster died in the ambulance en route to the hospital.

The accident was investigated by Officer Ernest L. Jenkins of the Fairfax County Police Department, who arrived at the scene 10 or 15 minutes after it occurred. He stated that the weather was clear, the road dry, and that the accident occurred in daylight. Jenkins described Highway 95 as a straight and level concrete road with no obstructions in the median strip.

When the officer arrived at the scene, Willhite was standing outside his vehicle. Defendant's explanation of the accident was that "he was traveling south on Route 95 and that the next thing he knew his vehicle was in the median strip crossing over to the northbound lanes". Jenkins said that Willhite had no difficulty remembering the events of the accident on either the date it happened or when he talked with him later. On his report regarding the speed of the Willhite automobile, he noted, "estimated speed of approxi-

mately 55 miles an hour". He also stated that at the point where the Willhite vehicle left the southbound lane, there is a "slight lip or a drop [of] . . . [a]n inch or two".

Gruber told the officer that "he was traveling north when all of a sudden a vehicle came out of the median strip into his direction of travel and the impact occurred".

The principles which control our decision have often been stated. For the administrators of Jeremy Foster to recover, they must establish by a preponderance of the evidence that the proximate cause of the accident was the gross negligence of Willhite.

We have defined gross negligence as conduct by a driver showing such indifference to others as constitutes an utter disregard of prudence amounting to complete neglect of the safety of the guest—such a degree of negligence as should shock fair-minded men, although something less than willful recklessness. And we have said that the mere happening of an accident does not give rise to the presumption of gross negligence.

The following extracts from *Grasty* v. *Tanner*, 206 Va. 723, 728, 729, 146 S. E. 2d 252, 256 (1966) are pertinent:

> "The burden was on the plaintiff to establish negligence by a preponderance of the evidence, and there must be more than the probability of a negligent act. It is elementary that an inference cannot be drawn from a presumption; it must be founded on some fact legally proven.
>
> "Here the evidence does not show what caused the automobile to leave the highway or the speed it was traveling at the time. One of plaintiff's exhibits shows the right front tire was blown out. The accident may have resulted from the blow-out, the accelerator sticking, a defect in the car's steering mechanism, or many other causes.
>
> "It is true that gross negligence may be proved by circumstantial evidence (*Hackley* v. *Robey*, 170 Va. 55, 195 S. E. 689) but in order for plaintiff to prevail the evidence must show something more than that the accident may have resulted from one of two causes, for one of which the defendant is responsible, and for the other of which he is not. *Richter* v. *Seawell*, *supra*, 183 Va. at pp. 382, 383, 32 S. E. 2d at p. 64; *Barnes* v. *Barnes*, 199 Va. 903, 907, 103 S.E. 2d 199, 202.
>
> "To uphold the judgment in this case it would be necessary

to resort to pure speculation, conjecture or guess as to the proximate cause of the accident."

The instant case presents a factual situation which does not find its parallel with other cases where this court has denied recovery by a guest for failure to establish gross negligence.

We are not concerned with the negligence of Gruber. The jury has found that he was not guilty of any negligence which was a proximate cause of the accident and of Foster's death. However, the jury did have a right to consider Gruber's testimony in determining the negligence of Willhite.

At the point of the accident the speed limit was 60 miles per hour. Notwithstanding the legal speed limit, the circumstances and conditions then existing and the traffic on the highway were factors to be considered by the jury in determining whether or not Willhite's speed was excessive. On the question of speed, we have Willhite's statement that he was operating his car in its highest gear and was accelerating to pass a truck immediately in front of him and in his lane of travel. He estimated his speed at 40 to 50 miles per hour. The report of the police officer reflects an estimated speed of 55 miles per hour. In Gruber's opinion, Willhite was going 60 to 65 miles per hour.

In determining the speed of the car, the jury had a right to consider that the Willhite car left visible skidmarks totaling 175 feet 8 inches before it collided with Gruber, and that it was sliding sideways during this distance.

Defendant Willhite was charged with the responsibility of keeping his vehicle under proper control. Manifestly a car is not under proper control when it leaves its lane of travel, skids sideways over 175 feet and collides with another vehicle in an opposite lane, as occurred in this case.

We think that the question of speed and control in this case was an issue for the jury. Unquestionably the vehicle was out of control. There is evidence which, if believed, would warrant a finding of excessive speed under the facts and circumstances then existing. The problem is whether their finding of gross negligence is sustained by the evidence.

Willhite's defense is based on his "unexplained leaving of the southbound lane", and he says this is not gross negligence as a matter of law. He contends that what happened to his car after

the unexplained leaving is a result of the leaving, not a series of additional acts of improper driving.

We do not think this case can be resolved that simply. The jury was in a better position to make the factual determinations than is this court. The locale of this accident, and the location of the ramp which feeds off Highway 495 into Highway 95, have bearing. This accident occurred shortly after Willhite came off the ramp onto Highway 95. His testimony is that he intended and did attempt to pass the truck and moved from the outside to the inside lane of travel, all of which occurred in the short distance between the intersection of Highways 495 and 95 and the Springfield Exit.

In many decisions of this court holding gross negligence not established, we have pointed to the failure of the plaintiff to show such negligence, or the fact that the evidence of the plaintiff showed that the accident may have resulted from one of several causes for one of which the defendant is responsible and the other of which he is not.

Here we have a vehicle that was obviously out of control and which the jury could have found was traveling at an excessive speed under existing conditions. However, plaintiffs have established more. They have, by positive and unequivocal testimony, mostly from Willhite, negated other possible causes of the accident for which defendant would not have been answerable.

It was established that the Austin-Healey automobile driven by Willhite was in good condition, and he does not attribute any mechanical defect or breakdown as a possible contributing cause.

It has been established that no act on the part of the decedent, Jeremy Foster, contributed to the accident.

Willhite testified that the truck did not veer or turn into the inside or passing lane, and that it in no way interfered with the operation of his car.

Defendant says that the car which was in front of the truck, and which indicated by a turn signal that it was going to move from the outside to the inside lane, was some 200 yards distant and did not interfere.

Defendant was in good health and suffered no physical disability or impairment. There is no suggestion of a heart attack or any sudden seizure.

The median strip was wide, level and free of obstructions.

We are not here dealing with a defendant who is suffering from

amnesia and has no recollection of the events which preceded or coincided with the accident. Willhite remembers in great detail the events of the morning of the accident—his leaving home, the manner and speed at which he drove, the presence of the truck, the right turn signal given by the truck, the presence of another vehicle in front of the truck and the left turn signal given by it, the gear in which his car was being operated, the fact that he accelerated to 50 miles per hour to pass the truck, and the fact that he went into a skid.

At the scene of the accident, defendant gave the police officer no indication of being injured, and discussed the details of the accident with the officer at the time and thereafter.

Summarizing, the jury exonerated Gruber of any negligence that contributed to the accident. The evidence is conclusive that the condition of the automobiles, the weather, the highway, the median strip and the health of defendant were not contributing factors. Willhite has exonerated the driver of the truck, and others who were operating vehicles in the vicinity of the accident, of any fault that contributed. Therefore, having eliminated these possibilities as contributing causes, there remains only the operation of the car by Willhite to consider.

Despite his memory of the particulars of the occurrence, he offers no explanation of why he lost control, and he tells us nothing of what he did to control, or to regain control of, his automobile before entering or while in the median strip. This strip was not just a grassy division between the north and south lanes of Highway 95; it was a 28-foot wide unobstructed safety-zone that Willhite traversed for 126 feet before leaving it and entering the north lane in which Gruber was traveling. His explanation and information stopped where his loss of control began.

It is not necessary that we engage in speculation, guess or conjecture as to possible causes of the accident for there is nothing in the record to suggest any causes unrelated to Willhite and his negligent operation of his vehicle.

True, the verdict of the jury has been disapproved by the trial judge and is therefore not entitled to the same weight on appeal as it would had it been approved. In the final analysis, and subject to proper supervision and review by the trial court, a jury is the trier of the facts. They have the benefit of information which

juries normally have in contested cases, including the opportunity to evaluate the witnesses as they testify.

Here, the trial judge did not strike the evidence at the conclusion of the plaintiffs' case but permitted the jury, under instructions of the court, to determine whether or not Willhite was guilty of gross negligence and whether or not Gruber was guilty of simple negligence. In his opinion the trial judge concluded Willhite was guilty of simple negligence as a matter of law. He further said:

"There is no question of causal relationship here. The act of that driver caused this accident, and I think it is simple negligence as a matter of law, the fact that he lost control of his vehicle and went on the wrong side of the road absent an explanation of what made him go over there, and that is exactly the situation in this case. He had absolutely no explanation at all."

We are not unmindful of, and adhere to, the pronouncements of this court regarding the degree of proof necessary to establish gross negligence.

We have also said that:

"Whether the conduct of a person operating an automobile amounts to gross negligence within the meaning of Code, § 8-646.1 depends upon the facts and circumstances surrounding the operation. The element of time incident to the accident must be considered with the surrounding circumstances in determining whether the driver's conduct constitutes gross negligence. One degree of care sufficient under certain circumstances may amount to gross negligence under others. If reasonable men may differ upon the question then a jury problem is presented. [Citing cases.]" *McDowell* v. *Dye*, 193 Va. 390, 397, 69 S. E. 2d 459, 464 (1952). See also *Nichols* v. *Brizendine*, 210 Va. 158, 169 S. E. 2d 457 (1969).

This court has consistently held that where the evidence is in dispute, the verdict of a jury will be approved unless it is not supported by the evidence. We cannot, under the facts and circumstances of this case and on the record before us, conclude that the finding of gross negligence by the jury is plainly wrong. We can-

not say as a matter of law that Willhite was not guilty of gross negligence.

In view of the decision we have reached regarding gross negligence, it is unnecessary for us to consider plaintiffs' other assignments of error.

For the reasons stated, the judgment of the court below will be reversed, the verdict of the jury will be reinstated, and final judgment thereon entered here in favor of the plaintiffs against the defendant, Dale E. Willhite.

*Reversed and final judgment.*