## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

NETTIE D. WILLIAMS, ADMINISTRATIX OF THE ESTATE OF ALBERT D. WILLIAMS, JR., DECEASED v. JOHN B. VAUGHAN, III, ADMINISTRATOR OF THE ESTATE OF TEMPLE MINOR CARNEAL, DECEASED.

October 8, 1973.

Record No. 8206.

Present, All the Justices.

*James A. Eichner (H. Marston Smith; Allen, Allen, Allen & Allen; Smith & Murphy,* on brief), for plaintiff in error.

*A. Fleet Dillard (Alexander F. Dillard, Jr.; Dillard & Dillard,* on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

Claiming damages for wrongful death, Nettie D. Williams, Administratrix of the Estate of Albert D. Williams, Jr., Deceased, (plaintiff) filed a motion for judgment against John B. Vaughan, III, Admin-

istrator of the Estate of Temple Minor Carneal, Deceased, (defendant) alleging that Carneal was guilty of gross negligence in the operation of an automobile in which Williams was riding as a guest passenger. At the conclusion of plaintiff's evidence, defendant moved to strike. Ruling as a matter of law that plaintiff's evidence was insufficient to prove gross negligence, the trial court, by final order dated September 6, 1972, sustained defendant's motion and entered summary judgment for defendant.

On September 23, 1970 Williams, Carneal, Franklin J. Taylor, William Danny Andrews, and Ronald J. Dolan were playing pool at the Tappanhanock Moose Lodge where Dolan was club manager. About midnight the five men left for home in Carneal's car. A short time later, while traveling east on State Route 615, the car struck a tree on the northern shoulder of the road. Williams and Carneal were killed, and the other three passengers were injured.

West of the scene of the accident the road is straight and down-grade for approximately one mile. Proceeding east the road curves 90° to the left and then 90° to the right within an interval of 150 feet. There were no traffic signs warning of the "S" curve and no signs fixing the speed limit. There was evidence at trial, admitted without objection, that as a result of this accident, curve warning signs and signs fixing safe speed at 25 m.p.h. were erected on both approaches to the "S" curve.

Plaintiff's evidence consisted of the testimony of the two principal witnesses, Dolan and State Trooper D. A. Howard, certain photographs, and Williams' funeral bill.

According to Trooper Howard, the physical evidence indicated that the car negotiated the left curve leaving no tire marks on the pavement, ran off the pavement on the left side of the right curve, turned on its left side, struck a tree and, having traveled a total distance of 93 feet in the loose gravel on the northern shoulder, came to rest six feet beyond the tree in an upright posture facing north with the front wheels in a creek. The top of the car, from the windshield to the rear window, was demolished.

Dolan, who had been riding in the right front passenger's seat, testified that none of the five men had drunk more than two or three beers and "everyone was in complete possession of their faculties and all right physically"; that as they were leaving the lodge he suggested that Carneal use State Route 615 as a short-cut but warned that it

was a "very curvy road and that we could not travel fast"; that after they entered the short-cut he told Carneal the second time to be careful of the curves and on a curve two miles west of the scene of the accident Carneal slowed from 50 or 55 m.p.h. to 30 or 35 m.p.h.; that approximately a quarter of a mile west of the scene of the accident while Carneal was traveling "about 50 or 55" he warned him a third time "that he would have to slow down because this 'S' curve is coming up and he was going too fast to make it around the curve" but Carneal maintained his speed; that as they came to the "S" curve he "actually yelled very loud" and for the fourth time warned Carneal "that he would have to slow down because he could not make it at that speed" but Carneal did not respond; that he made the first curve "fairly well" but "as we went into the second part of the 'S' curve, the front of the car was on the opposite side of the road too far and the front wheels of the car dropped off the road, and that is the last thing I can remember." On cross-examination concerning the personal injury suit he had filed against the Carneal estate Dolan testified that he had told an insurance adjuster that Carneal had reduced his speed to 25 to 30 m.p.h. as he approached the "S" curve but that in making this statement he was "trying to protect him at that time." Further on cross-examination Dolan admitted telling Trooper Howard that Carneal was driving no faster than he would have driven the same road.

The sole question at issue is whether plaintiff's evidence was sufficient to raise a jury question of gross negligence.

The general rule is that only when reasonable men cannot differ does gross negligence become a question of law. When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should grant the motion only when "it is conclusively apparent that plaintiff has proven no cause of action against defendant", *Leath v. Richmond, F. & P. R.R.*, 162 Va. 705, 710, 174 S.E. 678, 680 (1934), or when "it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it." *Green v. Smith*, 153 Va. 675, 679, 151 S.E. 282, 283 (1930). This is so because when a judgment based on a granted motion is reversed on appeal, a new trial must be conducted; when a plaintiff's verdict follows a denied motion, whether the verdict is set aside or confirmed by judgment below, this court may enter final judgment, thereby obviating the delay and expense of a new trial.

Dolan admitted on cross-examination that he had made prior statements inconsistent with his testimony on direct examination. His interest in the outcome of this case is evident from his testimony that he has a suit pending against this same defendant arising out of the accident. But prior inconsistent statements do not render sworn testimony nugatory. *Shelton* v. *Mullins*, 207 Va. 17, 147 S.E.2d 754 (1966). And the uncontradicted testimony of an unimpeached witness, unless inherently incredible, cannot be arbitrarily disregarded, even though the witness is interested in the outcome of the case. *Hodge* v. *American Family Life Assur. Co.*, 213 Va. 30, 189 S.E.2d 351 (1972).

In his brief, defendant argues that plaintiff's failure to call two of the three surviving eyewitnesses raises a presumption that the testimony of these witnesses would be adverse to plaintiff. This court has frequently stated that the unexplained failure to call material witnesses readily available may raise such a presumption. *E.g., Barner* v. *Whitehead*, 204 Va. 634, 133 S.E.2d 283 (1963). But, what might be a legal presumption in another context is here only a permissible inference available to the trier of fact.

The credibility of witnesses and the weight to be given their testimony are matters peculiarly within the province of the jury. In ruling on a motion to strike, trial courts should not undertake to determine the truth or falsity of testimony or to measure its weight. Rather, for purposes of the motion, unless sworn testimony is irreconcilable with logic and human experience, they must accept it as true, and "[a]ll inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced, or contrary to reason." *Green* v. *Smith, supra,* 153 Va. at 680, 151 S.E. at 283.

Taking Dolan's testimony at trial as true and drawing therefrom and from the physical evidence the inferences most favorable to the plaintiff, we cannot say, as a matter of law, that reasonable men could not find Carneal grossly negligent. Elemental prudence dictates that an automobile driver unfamiliar with the road heed the warnings of those who are. Carneal was warned four times, twice about the road in general and twice about the "S" curve in particular. That he heeded one warning given in a "normal tone" would justify an inference that

the warnings were clearly communicated. Even if the fourth warning came only after he entered the first curve and too late to be heeded, the third warning was given a quarter of a mile earlier in ample time to reduce speed and bring the car under that degree of control the curve required. According to Dolan, Carneal ignored both warnings and attempted to negotiate the "S" curve at 50 or 55 m.p.h.

In *Nichols* v. *Brizendine*, 210 Va. 158, 169 S.E.2d 457 (1969), where the physical circumstances were remarkably similar to those here, we held that excessive speed coupled with the host-driver's awareness of the particular hazards of the road was sufficient to raise a jury question of gross negligence.

Here, the jury could have found from Dolan's testimony and the permissible inferences from the physical evidence that, although Carneal was personally unfamiliar with the road, he was made aware of its specific hazards by the *repeated* warnings of one who was; that he consciously disregarded those warnings; that the speed in which he persisted, although within the statutory limit, was dangerously excessive in light of the hazard of which he was made aware; and that such conduct under such circumstances constituted "gross negligence or wilful and wanton disregard" within the meaning of Code § 8-646.1 (Repl. Vol. 1957) and, in the language of this Court, *"utter disregard of prudence amounting to a complete neglect of the safety of the guest."* *Ferguson* v. *Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971). For certain, reasonable men could differ.

The trial court erred in sustaining the motion to strike. The judgment will be reversed and the case remanded.

*Reversed and remanded.*